## TEEGARDEN VS. THE TOWN OF CALEDONIA.

*September 24 — October 12, 1880.*

HIGHWAYS.  (1) *Notice to town of injury from defective highway.*
EVIDENCE.  (2, 3) *Limitation of rule requiring production of written evidence.*  (4) *What objections to evidence must be taken specifically.*

1. Ch. 86, Laws of 1875, did not require the notice given to a town of an injury caused by a defective highway, to be signed by any person; and where such a notice under that act was served by the injured party in person, the fact that the signature of his attorneys thereto did not describe them as such attorneys, is immaterial.

2. Some time after the alleged injury, plaintiff was examined by the medical examiner of a life insurance company, on his application for insurance. Such examiner being called as a witness for defendant, it appeared that all that passed between him and plaintiff on that occasion relative to plaintiff's physical condition, was reduced to writing and signed by the witness alone. Defendant then asked witness, 1. "Did plaintiff on that occasion have propounded to him by you this question: 'Has the party met with loss of limb, or had serious personal injury?' 2. 'Was there anything said by you or by him in that conversation as to whether he had any serious injury?'" *Held*, that it was error to reject the testimony on the ground that said writing was the best evidence.

3. The extent of the rule which forbids the substitution of oral for written evidence, discussed per LYON, J.

4. The objection that questions propounded to a witness are *leading*, must be taken *specially*, or it is waived.

APPEAL from the Circuit Court for *Walworth* County.

For the appellant there was a brief in behalf of *E. O. Hand* and *J. V. Quarles*, signed by *Mr. Quarles*, and oral argument by *Mr. Quarles*.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

LYON, J. This is an action to recover damages for personal injuries alleged to have been received by the plaintiff in October, 1876, by reason of a defective bridge in a public highway of the defendant town. The plaintiff recovered, and the defendant has appealed from the judgment. We find it necessary

to consider but two points, and these will be understood without a detailed statement of the case.

1. In attempted compliance with chapter 86, Laws of 1875, the following notice was served by the plaintiff in due time on the person to whom it was addressed, who was then one of the supervisors of the defendant town: " Racine, October 18, 1876. *Joseph Fuhrman, Esq.* — DEAR SIR: On Friday *Dr. Teegarden,* while passing over the bridge on Duck creek, on the lake shore road, south of the point, was tipped over and injured by one wheel of his buggy running off the bridge. The bridge, as we are informed, had no railing. This is probably evidence sufficient to establish negligence on the part of the town, and make the town liable for damages. We are requested to ask the officers to settle damages. Very truly, FISH & LEE."

Unlike section 1339, R. S., the statute then in force did not require that the notice should be signed by the injured party, his agent or attorney; and although Fish & Lee did not describe themselves in the notice as the attorneys of the plaintiff, yet the fact that the plaintiff served the notice himself was sufficient to inform the town that they were acting for him. Such notice thus served was as effectual as though signed by the plaintiff himself, and would have been effectual although not signed by any one. We think, also, that the notice sufficiently describes the alleged defect in the highway, and apprises the town that the plaintiff claims satisfaction of it for his injuries. In short, we think the notice thus served is a substantial compliance with the statute in that behalf then in force.

2. On his cross examination, the plaintiff testified that he had been theretofore examined by Dr. Meachem for a proposed life insurance, but did not recollect whether it was before or after he was injured. He denied that he stated to Dr. Meachem, at that time, that he had met no loss of limb or serious personal injury. Dr. Meachem was called on behalf of the defendant, and testified that the medical examination re-

ferred to by the plaintiff was made by him in April, 1877, which was several months after the plaintiff was injured. A paper was here shown Dr. Meachem purporting to be a copy of the application of plaintiff for the life insurance, signed by him, and on the other side of the paper a copy of the medical examination in the form of questions and answers, signed by the examiner alone.

The witness testified generally that he could not state that the questions in the paper shown him were the same which he propounded to the plaintiff. Counsel for the defendant then put the following questions to the witness: "Did *Dr. Teegarden*, on the occasion to which you refer, to wit, the 25th of April, 1877, have propounded to him by you this question, 'Has the party met with loss of limb or had serious personal injury?' 'Was there anything said by you or by him in that conversation as to whether he had any serious injury?'" These questions were objected to, and an examination of the witness by plaintiff's counsel disclosed the fact that all that passed between the plaintiff and witness on that occasion, relative to the health and physical condition of the plaintiff, was reduced to writing and signed by the witness alone. The court sustained the objection, and the questions were not answered. The ground upon which the court rejected the testimony was, that the writing is the best evidence of what it contains, and parol testimony of its contents could not be received. The court said to counsel for defendant, "You will have to obtain the paper which was signed, and put it in evidence." These questions called only for affirmative or negative answers, and not for the statement of the plaintiff to the witness. Yet court and counsel treated them as calling for such statement. This was proper enough, for if answered in the affirmative they were preliminary to further questions calling for the statement of the plaintiff, and the objection to them is of equal force, as though taken to such further questions.

The rejection of the proposed testimony was manifestly erroneous. The medical examination signed by the examiner alone, had it been produced in court, probably would not have been competent evidence in chief, unless its contents were covered by the application signed by the plaintiff; and, were it competent, the rule which excludes parol evidence of the contents of certain writings is not applicable. Professor Greenleaf, in his treatise on the Law of Evidence, classifies the cases to which the rule is applicable that oral cannot be substituted for written evidence, under three heads: *first*, where the law requires a written instrument; *second*, where the parties to a contract have put it in writing; and *third*, where one party asserts the existence of a writing material to the issue, and it is disputed by the other party. Vol. 1, §§ 85 to 88, inclusive. In section 90 the learned author says: "But where the writing does not fall within either of the three classes already described, there is no ground for its excluding oral evidence; as, for example, if a written communication be *accompanied* by a verbal one to the same effect, the latter may be received as independent evidence, though not to prove the contents of the writing, nor as a substitute for it. Thus, also, the payment of money may be proved by oral testimony, though a receipt be taken. In trover a verbal demand of the goods is admissible, though a demand in writing was made at the same time. The admission of indebtment is provable by oral testimony, though a written promise to pay was simultaneously given, if the paper be inadmissible for want of a stamp. Such, also, is the case of the examination and confession of a prisoner, taken down in writing by the magistrate, but not signed and certified pursuant to the statutes. And any writing inadmissible for the want of a *stamp* or other irregularity may still be used by the witness who wrote it, or was present at the time, as a memorandum to refresh his own memory, from which alone he is supposed to testify, independently of the written paper."

The testimony sought to be elicited from the witness is not within either of the three classes above mentioned, and is clearly admissible.

Counsel for plaintiff refers to sections 465–6, of the same treatise, as supporting his view that the testimony was properly excluded. The rule there laid down is, that a witness cannot be asked, on cross examination, whether he has written such a thing, stating its particular nature and purport; the proper course being to put the writing into his hands and ask him if it is his writing. This is a rule of cross examination not applicable here. Had Dr. Meachem been permitted to testify as to oral statements made to him by the plaintiff, probably the rule would have precluded plaintiff's counsel from interrogating the witness as to the particular contents of the medical examination signed by him, without its production. This is the extent of the rule.

It is further said that the questions propounded to Dr. Meachem are leading. The first may be so. But no objection was made to it for that reason, and the proposed testimony was rejected on the merits. The objection, to be available, should have been special. Counsel also maintained in his argument, that Dr. Meachem disclaimed any independent recollection of what the plaintiff said to him on his examination for the life insurance, and hence that his answers to the overruled questions must necessarily have been that he had no recollection on the subject. He argues that because the answers would have been immaterial, the defendant could not have been prejudiced by the ruling of the court. We have carefully examined Dr. Meachem's testimony as preserved in the bill of exceptions. He failed to identify the paper shown him as being a true copy of the medical examination, signed by himself, and he disclaimed recollection of any conversation with the plaintiff concerning his physical condition other than is contained in the writing; but we do not find that he testified to a want of independent recollection of the

statement made to him by the plaintiff and included in the writing. He might have answered the overruled questions in the affirmative, and might have testified that the plaintiff represented that he had never received any severe personal injury, and was in a sound bodily condition, without doing violence to any other statement appearing in his testimony.

The rejected testimony may have been important to the defendant, and we must regard its rejection as a material error, fatal to the judgment.

*By the Court.*— The judgment is reversed, and the cause will be remanded for a new trial.