## QUEEN *v.* QUEEN.

## Opinion delivered January 18, 1915.

1. DEEDS—EXPRESS TRUST—ORAL PROOF.—Oral proof can not be heard to engraft an express trust upon a deed absolute in form.

2. LOST INSTRUMENT—HOW PROVED—ACTION ON.—In order to sustain an action on a lost or destroyed instrument, the contents of the instrument must be shown by clear and convincing evidence.

3. DEEDS—DECLARATION OF TRUST—LOST INSTRUMENT—ORAL EVIDENCE.— J. deeded property to his son A., the deed recited a consideration and was recorded. In an action by the heirs of J., against the heirs of A., the former sought to have the deed set aside and undertook to prove a declaration. *Held*, the evidence of the written declaration was too vague and uncertain to warrant a finding that the deed from J. to A. was not intended to be absolute.

4. TRUST EX-MALEFICIO—SUFFICIENCY OF THE EVIDENCE.—In an action to set aside a deed absolute in form, evidence held insufficient to show that the grantee was guilty of any fraud or deceit, so as to raise a trust *ex-maleficio* in himself.

Appeal from Scott Chancery Court; *W. A. Falconer,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellants instituted this action in the chancery court against appellees for the purpose of setting aside a deed executed by John H. Queen, now deceased, to his son, Albert Queen, also deceased. The facts so far as are necessary to determine the issues raised by the appeal, briefly stated, are as follows:

Appellants, who were the plaintiffs below, are the heirs at law of John H. Queen; appellees, who were the defendants in the court below, are the widow and children of Albert Queen, who was a son of John H. Queen. The tract of land in controversy is situated in Scott County, Arkansas, and was formerly owned by John H. Queen. John H. Queen and his children removed to the Indian Territory, now the State of Oklahoma. John H. Queen and his son Albert lived in the eastern part of the Territory but some of the other children lived in the western part of it. On the 17th day of January, 1895, John H. Queen and Nancy Queen, his wife, by warranty deed, conveyed the land in question to his son Albert Queen.

The consideration recited in the deed was $1,000. John H. Queen resided with his son, Albert Queen, from the time of the execution of the deed until his death some time in December, 1895. His widow continued to reside with Albert Queen until her death in 1911. Albert Queen died intestate on the 7th day of September, 1913. The deed from John H. Queen to Albert Queen was filed for record on the 17th day of February, 1898.

The deposition of H. R. Ryburn was taken in May, 1914. He testified that he had known the land in controversy for twenty years and had lived on it fourteen years; that he first bought the place, held it for a year and then let it go back to John H. Queen; that he bought it before he moved on it and that he held it as a renter for fourteen years under a contract between him and John H. Queen and his son, Albert; that the contract was drawn up and signed by John H. Queen and his son, Albert Queen, at his house and acknowledged before a justice of the peace; that it was witnessed by Bill Dodd and himself; that it was executed about twenty years ago, was given to him and that he kept it up till about the time of his wife's death; that after that time his children disposed of it in some way or other; and that the reason he kept the contract was because he was to have the place under the contract as long as he wanted it. He was asked to state as fully as possible the contents and provisions of the contract, and he answered as follows:

"Well, the rent of the place was to go to Albert Queen after old man Queen's death, for the support of Albert's mother, as long as she lived with Albert. If, for any cause, she went any place else, the rent was to go wherever she went. That is the main part of the contract about the rent. This contract called that at Albert's mother's death that if he would pay $1,000 as stated in the contract and the deed, that he could hold the place. This deed was held by Albert Queen and was made by his father, John H. Queen. If Albert did not pay this $1,000, it was to go to the children. This contract further provided that I was to keep the land and the rent to go to

Albert's mother. Under the contract Albert could not sell the land, and I kept him from selling it twice. Albert could not rent the land as long as I stayed on it.

"I paid the rent to John H. Queen one year. He died before the second crop, and I paid the rent to Albert Queen thereafter. I paid the taxes on the land while I had it, and took the taxes out of the rent. I can not state exactly how much rent I paid each year, but it was something like $200, after deducting taxes and expenses. The last year I paid $303.90 above expenses and taxes."

Bill Dodd testified that he was acquainted with the land in question; that he saw the contract at Ryburn's house and that as well as he remembered Ryburn was living on John Tull's place at that time; that he signed the contract as a witness and that there were present John H. Queen, Albert Queen and Henry W. Ryburn and his boy; that the contract was not read to him and that he did not know anything about its contents; and that this was about a year and a half before John H. Queen's death.

There was other testimony on the part of appellants tending to show that John H. Queen before his death spent a part of his time each year in western Oklahoma with some of his children and that he spent the remainder of it with Albert Queen, who resided in eastern Oklahoma.

The testimony on the part of appellees tended to show that John H. Queen resided with his son, Albert, until he died and that after his death his widow continued to reside with him until she died; that Albert Queen subsequently died and that during all the time from the date of the execution of the deed until his death he claimed the land in controversy.

The chancellor found the issues in favor of the appellees; and to reverse the decree entered of record appellants have prosecuted this appeal.

*Carmichael, Brooks, Powers & Rector,* for appellants.

1. That parol evidence is inadmissible to engraft an express trust upon a deed absolute in form is con-

ceded; but there is also a well established rule that is admissible to prove a trust in opposition to a deed or other written instrument, where the evidence is sufficiently positive to leave no doubt of the fact. 11 Ark. 82; 111 Ark. 45. In this case there was no attempt to establish a trust by parol. The facts show that at the time of the making of the deed there was a separate contract in writing, explaining how the land was to be held by Albert H. Queen.

All the papers executed in relation to a matter of contract, constitute the entire contract. If there was any doubt about what the contract meant, testimony showing the understanding of the different members of the family was competent to show how John H. Queen intended that Albert H. should hold the property. We think the testimony clearly shows that Albert H. Queen held the property in trust and recognized the trust up to the time of his death. 110 Ark. 394; 103 Ark. 58.

There is sufficient writing shown in this case to create an express trust, and the writing testified to by witnesses Dodd and Ryburn takes the case out of the statute of frauds and meets the requirements laid down in *Gainus* v. *Cannon,* 42 Ark. 503. See also 101 Ark. 451; 71 Ark. 302; 64 Ark. 155; 54 Ark. 499.

2.. The evidence establishes a trust *ex maleficio.* 3 Pomeroy, Eq. Jur., § 1053; 73 Ark. 310; 84 Ark. 189; 92 Ark. 55.

*A. G. Leming,* for appellees.

1. Appellants will not be permitted to rely in this court upon an issue not pleaded in the lower court. They did not plead nor otherwise disclose to appellees any intention to prove or establish a contemporaneous written contract made at the time of, or prior to, the execution of the deed. No foundation was laid for the introduction of evidence to establish the contents of the alleged contract, and no testimony was introduced regarding its provisions, save only the testimony of the witness Ryburn, and he is wholly uncorroborated. The chancellor's finding is against the existence of such a document, and no

suggestion that the complaint be amended or considered as amended so as to include it was made in that court. 75 Ark. 465, and cases cited; 94 Ark. 392, and cases cited.

2. The evidence is wholly insufficient to show that a trust was ever intended. 75 Ark. 446; 89 Ark. 182; *Id.* 542; 105 Ark. 323; 71 Ark. 373; 3 Pom. Eq. Jur., § 1040; 104 Ark. 37.

A trust *ex maleficio* is not established by the evidence, as that trust is defined and approved by this court. 73 Ark. 310; 92 Ark. 55; 84 Ark. 189.

HART, J., (after stating the facts). The deed of John H. Queen to his son, Albert Queen, to the land in controversy, executed on the 17th day of January, 1895, was a warranty deed in common form and conveyed a fee simple title to the lands to Albert Queen.

(1) It is conceded by counsel for appellant that the deed being absolute in form an express trust can not be engrafted upon it by oral testimony, and that is the effect of our decisions upon the question. It is well settled by the decisions of this court that oral proof can not be heard to engraft an express trust upon a deed absolute in form. *McDonald* v. *Hooker,* 57 Ark. 632; *Veasey* v. *Veasey,* 110 Ark. 389, and cases cited.

It is contended, however, by counsel for appellants that the proof brings this case within that class of cases where there is an absolute conveyance on the one hand and in return a written declaration of trust upon which the property is held. That is to say, that John H. Queen made an absolute conveyance to Albert Queen, the proposed trustee, and that there was also a written contract of the purposes or trust upon which Albert Queen was to hold the property. To sustain this contention they rely chiefly upon the testimony of H. W. Ryburn. We have copied his testimony in relation to the written contract which was executed at his house between himself and John H. Queen and Albert Queen and do not deem it necessary to repeat it here. It is true he testified that the contract which was executed on that occasion was

lost; and if it be conceded that his testimony was sufficient to admit secondary evidence of the contents of the lost instrument, we think the testimony is too vague and indefinite and that the substance of the contract is not satisfactorily proved.

(2) In a case note to 2 American and English Annotated Cases, at page 41, it is said that to sustain an action on a note, bond, deed or other instrument which has been lost or destroyed, the contents of the instrument must be shown by clear and convincing evidence. A number of cases from many states are cited to support the rule. Among the cases cited is that of *Hooper* v. *Chism,* 13 Ark. 496. In that case the court held:

"Where such bill of sale is alleged to be lost, and its contents as alleged are denied by the answer of defendant, they should be substantially proven, where no copy is produced, by a witness who has seen or read the instrument, or is otherwise enabled to speak with some degree of accuracy as to its contents, and identify it as the one executed by the party to be charged."

It will be noted that Ryburn gave his deposition in May, 1914. He said that the contract in question was executed about twenty years before. The deed from John H. Queen to his son, Albert, was executed in January, 1895. If the contract in question was executed twenty years before Ryburn's testimony was given it was executed in 1894, prior to the execution of the deed from John H. Queen to his son, Albert. John H. Queen died in December, 1895.

Bill Dodd, who also witnessed the contract, said that he did not remember anything about its contents because it was not read over to him, and that the contract in question was executed about a year and a half before old man Queen died. This would also place the execution of the contract at a date earlier than the date of the execution of the deed.

Ryburn also testified that prior to the execution of the deed to Albert Queen he had made a contract with John H. Queen for the purchase of the land and had let

the land go back, because he was unable to pay for it. It may be the contract he is testifying to now is the one executed when he purchased the land. In any event, the testimony shows that it was executed before the deed from John H. Queen to his son, Albert Queen, was executed. There is nothing in the record tending to show that it was executed contemporaneously with the deed or with reference to it. It may be that prior to the execution of the deed John H. Queen had entered into some kind of written contract with his son, Albert, and that later the contract was changed by the execution of the deed in question.

It is true the consideration recited in the deed is $1,000 and it is shown that Albert Queen had no means with which to pay for the land. The record shows, however, that John H. Queen at the time he executed the deed was an old man and was not able to work. It may be that he intended to provide a home for his wife and himself during their old age and the testimony shows that he lived with his son, Albert, until he died and that his widow lived with him for several years thereafter until she died.

The deed was acknowledged before L. E. Hoover, a justice of the peace. The contract about which Ryburn testified was acknowledged, he says, before Squire Youman, a justice of the peace. Thus it will be seen, there is nothing to show that the deed and the contract in question were executed at the same time, or that Albert Queen, the grantee in the deed, subsequently executed a written declaration of trust covering the land embraced in the deed.

(3)    Moreover, we are of the opinion that the substantial contents of the instrument were not proved by such clear and satisfactory evidence as is required by the rule above announced, and that the court did not err in finding that there was no written declaration of trust as contended for by counsel for the appellants. Where parties reduce their contracts to writing, the obligation and duties of which are described and limited by the in-

strument itself, the security which is expected from the written instrument would be much impaired if the contract could be established upon such uncertain and vague impressions as have been testified to by the witnesses in this case.

(4)    Again, it is contended by counsel for appellants that Albert Queen was a trustee *ex maleficio* within the rule announced in *Bragg* v. *Hartney,* 92 Ark. 55, and like cases. We do not think it necessary to make any extended comment on this contention. It is sufficient to say that we have read the record carefully and that there is a total absence of any testimony tending to show that Albert Queen practiced any actual fraud whatever upon his father to procure the deed. Neither do we think the record establishes that he procured the deed through undue influence, or by taking advantage of his father's old age or necessities. As far as the record shows, the execution of the deed was a free and voluntary act on the part of John H. Queen and his wife, who were at the time of sound mental condition.

The decree will be affirmed.