C. CLEOPHAS, Appellant, v. C. A. WALKER, Executor, et al., Appellees.

No. 40206.

NOVEMBER 18, 1930.

*Senneff, Bliss, Wilwer & Senneff,* for appellant.

*W. H. Salisbury,* for appellees.

KINDIG, J.—On July 19, 1919, H. O. Haugen and C. H. Walker executed two promissory notes, payable to the plaintiff-appellant, C. Cleophas, at the Kensett Bank, Kensett, Iowa, in  the amounts of $4,260.57 and $5,000, respectively, together with interest. These notes were renewals of original notes, given perhaps as early as 1909. The appellant all that time was a banker at Kensett. H. O. Haugen, who signed the foregoing notes, was the son-in-law of the other signer, C. H. Walker, and the nephew of appellant's sister.

Haugen, it seems, had worked in appellant's bank at Kensett. In 1909, however, Haugen moved to the state of Washington. Before leaving for Washington, Haugen, together with his wife, Harriette, and his father-in-law, C. H. Walker, went to appellant's bank, and arranged to borrow the money represented by notes the renewal of which are the notes in question. Appellant refused to loan the money to H. O. Haugen unless the father-in-law, C. H. Walker, signed the notes as surety. When the original notes became due, the present renewal notes were executed in lieu thereof, and thereon H. O. Haugen again was the maker, and his father-in-law, C. H. Walker, the surety.

No claim is made in the present controversy that it was improper for the defendants-appellees to prove that C. H. Walker was in fact a surety on the notes in question. All the money represented by the foregoing loan went to and was used by H. O. Haugen in Washington. There is no serious dispute of the fact, and, in effect, it is conceded, that Walker was a surety. Walker, the surety, died April 16, 1926. C. A. Walker, son of C. H. Walker, deceased, is the executor of his father's estate. Julia E. Walker is the surviving widow of C. H. Walker, deceased. Harriette W. Haugen and Alice E. Jolliffe are the daughters of said Walker. Those named persons are the defendants and appellees.

This suit was commenced on July 14, 1927, for the purpose of having the foregoing notes allowed as claims against the

Walker estate, and also to set aside certain real estate conveyances, in order that the alleged debt might be paid therefrom. Appellees, for a defense to the appellant's claim, alleged and sought to prove that C. H. Walker, before his death, and after the foregoing notes became due, duly served a notice in writing upon the appellant, pursuant to the statute then in force, requiring the appellant "to sue on the obligation" or permit him, as surety, to do so. Upon the subject under consideration, the 1897 Code of Iowa, then in effect, provides:

"Section 3064. When any person bound as surety for another for the payment of money, or the performance of any other contract in writing, apprehends that his principal is about to become insolvent or remove permanently from the state without discharging the contract, he may, if a cause of action has accrued thereon, by writing, require the creditor to sue upon the same, or permit the surety to commence an action in such creditor's name and at the surety's cost.

"Section 3065. If the creditor refuses or neglects to bring an action for ten days after request, and does not permit the surety to do so, and furnish him with a true copy of the contract or other writing therefor, and enable him to have the use of the original when requisite in such action, the surety shall be discharged."

I. In order to prove the contents and service of such notice, appellees avail themselves of oral testimony. It appears that the appellees do not have in their possession a copy of the notice, and the appellant denied receiving the original or a copy thereof. Hence, the appellant failed to produce the same for appellees' use at the trial. That notice was served, it is alleged, in 1922. Under those circumstances, it was proper for the appellees to introduce oral testimony for the purpose of showing the contents of the notice served. *Kerr v. Topping*, 109 Iowa 150; *Borden v. Isherwood*, 120 Iowa 677.

Likewise, it was permissible for appellees to prove the service of the notice by oral testimony. *City of Des Moines v. Casady*, 21 Iowa 570; *Farrell v. Leighton*, 49 Iowa 174; *Markley v. Western Union Tel. Co.*, 144 Iowa 105; *In re Estate of Schultz*, 192 Iowa 436; *McLenon v. Kansas City, St. J. & C. B. R. Co.*, 69 Iowa 320; *Shawhan v. Loffer*, 24 Iowa 217. Conceding, in effect,

that the law is as above stated, appellant seeks to avoid appellees' defense on the theory that their proof was insufficient. Such proof appellant declares must be ''clear, cogent, unequivocal, and satisfactory.'' *Stewart v. Todd,* 190 Iowa 283; *Queen v. Queen,* 116 Ark. 370 (172 S. W. 1018); *Slaughter v. Cornie Stave Co.,* 172 Ark. 952 (291 S. W. 69); *Scurry v. City of Seattle,* 56 Wash. 1 (104 Pac. 1129). With the requirement in regard to the proof requisite, we agree with the appellant. Said proof must be clear, positive, convincing, and satisfactory. Tested by that standard, it is now to be determined whether appellees' proof was sufficient.

H. O. Haugen, the maker, was quarreling with his wife, the daughter of C. H. Walker, deceased. The note was past due, and had not been paid; neither had the note been renewed, or otherwise met, as required by good business. C. H. Walker, the surety, then living, in 1922 dictated, and finally personally presented, the notice above described, to the appellant in his bank at Kensett. To prove this fact, the appellees offered the following evidence. Charles A. Walker, the son, declared:

''In the early part of 1921, my father and I were in Kensett, and met C. Cleophas [appellant] in front of the hotel, and I heard the conversation. Well, the sum and substance of it was, he [C. H. Walker] wanted him [appellant] to start action on the notes. My father said to Cleophas [appellant] that he [C. H. Walker] wanted him [appellant] to start action on the notes, and Cleophas [appellant] said he didn't want to start any action or trouble against him [Haugen]; that, rather than to start trial on them or action against Henry [Haugen], he would carry them himself. That was the only time I was ever down to Kensett with my father in connection with these Haugen notes.''

Harriette W. Haugen, the surety's daughter, claims to have been the scrivener who prepared the notice for her father. Mr. Walker read law, and possessed Miller's Code of 1888. While dictating the notice, it is alleged by Harriette, her father had Miller's Code before him. So far as material, the provision in regard to the service of notice by surety upon the payee of the note is the same in Miller's Code as in the 1897 Code. When testifying, Harriette said:

''The notice was addressed to Mr. C. Cleophas [appellant] at Kensett, and it described these two notes, stating that Mr.

Cleophas [appellant] held the two notes described, and that they were against H. O. Haugen, and C. H. Walker; and he [C. H. Walker] claimed that he was the surety for H. O. Haugen. He [C. H. Walker] demanded that Mr. Cleophas [appellant] bring an action—bring suit, I believe was his word—against H. O. Haugen and himself [C. H. Walker], or allow him [C. H. Walker] to do it, at his [C. H. Walker's] own expense, in the name of Mr. Cleophas [appellant]; and if Mr. Cleophas [appellant] did not comply with his [C. H. Walker's] request within ten days, that he [C. H. Walker] considered that he [C. H. Walker] would be released from all financial obligation on these two notes.

"Q. Did you write that notice more than once? A. I did. Q. What was the final correction which you made on the notice? A. Well, he [C. H. Walker] brought me his Code of Iowa, and had me copy something out of the Code of Iowa. Q. Your father frequently studied the Code of Iowa? A. He did. Q. He always had a copy of it in his possession? A. He did. Q. I am showing you now Sections 2108 and 2109 of the Revised Code of Iowa, known as Miller's Code, dated July 4, 1888, and I will ask you if those are the two sections you copied into that notice. A. They are. Q. When you had written the notice the final time, and embodied these sections, in addition to what you have stated, what did you do with the notice? A. I gave it to my father, C. H. Walker."

This notice was thus written by Harriette for her father, it is claimed, in her father's dining room at Northwood. First the dictation was taken by Harriette in long hand, and afterwards transcribed by her on the typewriter.

Dr. Clough, who is acquainted with the Walker family, and lived in Florida, testified:

"Q. And your profession is what? A. Physician. I was at Northwood in the summer of 1922, staying at the home of C. H. Walker, who I had known about all my life. I was raised near the same town in the same county that Mr. Walker [the surety] was raised. I was just there visiting the Walkers. Q. Were you at that time studying medicine? A. I was taking a graduate course at Minneapolis Physio-Theraphy school. Q. Had you at that time made any study of law? A. Well, yes, some, at the Blackstone School at Chicago, for my own use only, however. I

was engaged in the study of law for my use since 1919 to that time. I, while at the home of C. H. Walker [the surety] assisted him in preparing a notice. Mr. Walker at that time had Miller's Code of 1888. His daughter [Harriette] did the writing of the notice. Q. Were you there when the notice was dictated to her, or when she took it? A. I was there when it was dictated in long hand, and she took it first in long hand, and from dictation transcribed it on the typewriter. Q. Were you there during the time the notice was being prepared? A. Yes, sir. Q. State as near as you can the substance of the notice after it was finally prepared and arrived at. A. I am not certain that I can re-create it in the exact language that it was written; but as near as I could remember, it was a notice directed to Mr. Cleve Cleophas [appellant] at Kensett, Iowa, and calling attention directly to two certain notes, fully, of five thousand and four thousand dollars and something, and calling upon Mr. Cleophas [appellant] to bring suit upon these notes against one H. O. Haugen [the maker] and C. H. Walker [the surety] ; and in the notice, Mr. Walker [the surety] stated and stressed that he was only the surety upon these notes, and demanded that Mr. Cleophas [appellant] start suit against Haugen and Walker immediately, or that he give Mr. Walker the privilege of bringing suit on those notes at his own expense, in the name of Mr. Cleophas [appellant], and notifying him that, if he did not do so in 10 days, that he [Walker, the surety,] would consider himself, as far as the notes were concerned, off from them, and under no further obligation on the notes. * * * The notice carried with it copies of Sections 2108 and 2109 [of Miller's Code] ; and that, in substance, completed the notice. Q. In the preparation of this notice, did Mr. Walker [the surety] have this Code before him, and did you have it before you? A. Yes, sir, we had the Code right before us all the time. Q. And were these sections of the Code that you stated copied into the notice that was prepared there? A. Yes, sir. Q. Did you read the notice over yourself? A. Several times. Q. Were you present when Mr. Walker [the surety] went out to see Frank Forbes [a retired lawyer] about the notice? A. Yes, sir; in fact I suggested that he go out to see him [Forbes], after Mr. Walker told me Forbes had been his attorney in several cases, and I suggested that we drive out there. Q. And did you drive out there? A. Yes, sir, and took Mr. Walker and his daugh-

ter [Harriette] out there in my car. Q. And at that time was this notice, the substance of which you have attempted to give, shown to Mr. Forbes? Yes, sir. Q. And after that, Dr. Clough, do you know what became of that notice? A. I do. We drove to Mr. Walker's home and left Mrs. Haugen there, and then went directly to Kensett in my car, and took the notice which Mr. Walker [the surety] had in an envelope of his own, and took it out and read it again, and got out of the car and went into the bank, and Mr. Cleophas [the appellant] came to the wicket. * * * And the notice was delivered to him [appellant] in person, and Mr. Walker [the surety] told him [appellant] that he wanted him [appellant] to start suit immediately, or allow him [Walker, the surety,] to; and Mr. Cleophas [appellant] made the remark that he didn't like to start any action against Haugen [the maker]; and we came out and got in the car and went home.''

Frank Forbes, the lawyer to whom it was said Walker went for advice concerning the notice, said on the witness stand:

''My profession is lawyer. I have been practicing in this vicinity since 1881. In 1919-20 and 22, I was not actively in practice. I retired from practice in 1919, and moved out on a farm, where I lived in 1922. I knew C. H. Walker [the surety] in his lifetime. He was quite frequently a client of mine. I remember of him consulting me in regard to some notes he had signed with Haugen [the maker] payable to Cleophas [appellant]. * * * Walker [the surety] drove out to the farm where I lived, but that day that he went out there, I was not at home; and he found me at the home of my stepdaughter, a mile and a half further east than my home, and I had a talk with him that day at that place. Q. Did you see a notice which Walker [the surety] had prepared, which he claimed was prepared to serve on Cleophas [appellant]? A. I did. Q. And state, if you can, the contents of this notice, the best you can. A. The notice was directed to Mr. Cleve Cleophas [appellant], of Kensett, and it stated that Mr. Cleophas held two notes, signed by H. O. Haugen and C. H. Walker, dated July, 1919, and due in July, 1920, payable to Mr. Cleophas, and it also stated that Walker was only a surety on the notes and it demanded that Mr. Cleophas [appellant] commence suit on the notes immediately against Haugen and against Walk-

er, or that he [appellant] should allow Mr. Walker [the surety] to commence suit in Cleophas' name, at Walker's expense, and stated that, if he [appellant] did not do so within the time prescribed by law, that Walker would consider himself entirely released from any liability upon the notes; and the notice also contained a copy of two sections of the law in reference to the serving of such a notice. The notice was in typewriting.''

In dispute of the foregoing evidence, appellant emphasizes five propositions. They are: First, the inconsistency in the testimony given by Harriette, Frank Forbes, and Dr. Clough; second, the impeachment of appellees' witness, Dr. Clough; third, the testimony of appellant; fourth, the testimony of Herbert Cleophas; and fifth, the testimony of the maker, H. O. Haugen.

Considering appellant's propositions in the order named, it occurs to us: First, that, when the testimony is generally considered, the appellees' witnesses did not contradict themselves, or in any way become materially inconsistent. Their stories harmonize, in the whole. It is true that Harriette Haugen did not know whether there was anyone present except herself and her father when the notice was dictated, while Dr. Clough said he was there. Yet that does not amount to an inconsistency, because Harriette Haugen says she did not remember. Then considering, as we must, appellees' testimony as a whole, it is evident that the same is reasonable, and in every way meets the requirements for proof of this kind.

Second, the witness Dr. Clough was attacked by appellant, and impeaching evidence concerning him was introduced. By that evidence it was attempted to be shown that the doctor's reputation for truth and veracity was bad in the community where he lived. Regardless of that testimony, however, the doctor was corroborated so fully by Harriette Haugen and the attorney Frank Forbes that we are inclined to believe what the doctor said. There could be no possible reason for the surety, Walker, to carefully prepare the notice in question and submit the same to his attorney, Frank Forbes, if thereafter the same was not to be served upon the appellant. With that corroborating testimony, therefore, we are not prepared to disregard the statements of Dr. Clough, although impeaching witnesses did attack his veracity.

Third, appellant, while being examined, declared that the notice never was presented to or served upon him. Furthermore,

appellant said that Walker, the surety, after the notice is supposed to have been served, called upon appellant, and asked for an extension of time, and that suit first be brought against the maker, Haugen. C. A. Walker apparently was present during one of those alleged conversations, and he denies that his father made any such request whatsoever. Moreover, appellant at the time of the trial was an old man, and his memory was apparently failing; because he contradicted himself upon many occasions, and made various statements that were afterwards shown not to be true. Attention is here called to the fact that the appellant did admit that Walker, the surety, asked the former to sue the maker, thereby corroborating the appellees to that extent.

Fourth, Herbert Cleophas in effect said that C. A. Walker, the executor, without saying anything about the notice, asked that the appellant try to get what he could on the notes from Haugen, the maker. This was emphatically denied by C. A. Walker. He said that he did tell Herbert Cleophas that he would be glad to advise a settlement of the case on the basis of $1,000. In doing so, however, C. A. Walker says he told Herbert Cleophas that the estate was not liable on the claim.

Fifth, Haugen, the maker, testified that, sometime early in the year 1925, Walker, the surety, wrote him a letter, to the effect that Walker would remain upon the note as surety until Haugen, the maker, could sell certain property. That, it is observed, was after the foregoing notice by the surety is alleged to have been made upon the payee. Such letter, however, was not produced, and testimony was admitted into the record on the theory that the letter was lost or destroyed. Explanation for that letter may be found in the testimony of Harriette Haugen, as shown by the following excerpt from the record:

"Q. In the deposition of H. O. Haugen, taken for use in this case, he states that your father, C. H. Walker, 'agreed by letter that he would stay on my note until I was able to sell.' Do you know whether or not your father did in fact write a letter to H. O. Haugen in which any such statement was made? A. About the time the re-signed notes were due [July, 1920], Haugen wrote my father that he had a deal pending for the sale of his store buildings, and feared it would upset it, to get a new indorser on the notes, and asked my father to continue as surety until the deal was consummated. In answer to this request, my father dic-

tated a letter, which I wrote to Haugen, saying he had no objection to staying on the notes until the deal went through.''

Undoubtedly, Haugen is mistaken regarding the date when the foregoing letter was received. Notwithstanding the appellant's testimony, therefore, it is manifest that there still remains great weight and force in the testimony given by appellees' witnesses. Appellees' evidence concerning the contents of the notice to the maker, and the fact that such notice was served upon the appellant, under the record, is clear, positive, convincing, and satisfactory. Therefore, we are constrained to hold that C. H. Walker, during his lifetime, at or about the time indicated, served the notice aforesaid upon the appellant, and that, because the latter did not bring suit, or otherwise comply with the applicable statutory provisions, the surety is released from the notes, unless the notice was insufficient because not signed.

II. Nowhere in the evidence does it directly appear that the notice was signed. An argument, therefore, is made by appellant that the notice was not signed, and consequently was insufficient, under the statute.

While there is no evidence to the effect that the notice was in fact signed, yet it does not appear affirmatively that the signature of C. H. Walker was not thereon. Certain indications are  that the notice was signed: for instance, the contents thereof would so indicate. But, if we assume, without deciding, that the notice was not signed, nevertheless that does not mean it was insufficient, under the circumstances. The basis for this pronouncement is that the notice itself, in the context thereof, suggested that it was being given by the surety, C. H. Walker. More than that, C. H. Walker himself personally delivered the notice to the appellant. Because of those facts, the notice was sufficient to comply with the statute. See *Teegarden v. Town of Caledonia*, 50 Wis. 292 (6 N. W. 875) ; *Evangelical Lutheran St. Peter's Gemeinde v. Koehler*, 59 Wis. 650 (18 N. W. 476).

Reliance is made by appellant upon cases requiring that notices on jurisdictional propositions be signed, as illustrated by *Doerr v. Southwestern Mut. L. Assn.*, 92 Iowa 39, and *State Sav. Bank of Rolfe v. Ratcliffe*, 111 Iowa 662. A signed notice is not expressly required by Section 3064 of the 1897 Code, and the

situation is rather analogous to the demand for notice as a prerequisite for a cause of action, or to start the statute of limitations, rather than a condition precedent for jurisdiction. See *Neeley v. Incorporated Town of Mapleton*, 139 Iowa 582; *Ray v. City of Council Bluffs*, 193 Iowa 620. Especially is this true when it is recalled that the notice itself indicated that it was by the surety, Walker, and he himself personally served the same upon the appellant. Moreover, the notice was addressed to the appellant, Cleophas. See *In re Assignment for Benefit of Creditors of Lounsberry*, 208 Iowa 596. Hence, the notice was sufficient in all respects, and the surety released from the notes, provided that H. O. Haugen's residence outside the state did not prevent the application of the statute.

III. Appellant argues that it was not incumbent upon him to follow the maker beyond the Iowa boundaries. So, he contends, the statute has no application to the situation here involved, because the maker did not live in Iowa when the notice was served.

Manifestly, appellant's contention cannot be sustained. Section 3064 of the Code, applicable, did not compel appellant himself to sue the maker, but the former, under the statute, could  have permitted the surety to sue the maker. Consequently, the situation did not require appellant to travel beyond the Iowa boundaries for the purpose of bringing suit. He could have permitted the surety to make the journey necessary beyond the Iowa boundaries. This is not a new question, for the proposition was determined in *Hayward v. Fullerton*, 75 Iowa 371, wherein we said, on page 373:

"It appears from the evidence that Calkins, the principal, had permanently removed from this state at the time the notice to bring suit was served upon the plaintiff. It is contended by counsel for appellee that the statute does not require the holder of a note to pursue the principal to another state in order to avoid a release of the surety. But this is fairly answered by the statute authorizing the notice to be given. It provides that, if a surety apprehends that his principal is about to become insolvent, or to permanently remove from the state, the surety may by writing require the creditor to sue upon the note, or permit the surety to commence suit in the creditor's name and at the surety's cost.

It is further provided that, if the creditor refuse to bring suit, or neglect to do so for ten days after request, and does not permit the surety so to do, and furnish him with a true copy of the contract, and enable him to have the original, when requisite in such suit, the surety shall be discharged.''

Wherefore, the statute in question had full application, and the judgment and decree of the district court must be affirmed, unless there is to be a reversal because of errors presently discussed.

IV. Reversal is demanded here because the district court overruled the appellant's motion to strike Paragraph 15 of the appellees' answer. As a foundation for the motion, the appellant claims that the answer did not allege that H. O.  Haugen, the maker, ''was about to remove from the state, or that he was about to become insolvent, or that he was insolvent.'' Without those allegations, appellant urges, the answer was not sufficient.

Originally, the answer did not contain allegations declaring that C. H. Walker apprehended that the maker was ''about to become insolvent or remove permanently from the state,'' etc.; but, before the motion was ruled upon appellees amended their answer, so that it did contain averments concerning the surety's apprehensions regarding the maker, as required by the statute. Such allegation is adequate. *First Nat. Bank of Newton v. Smith,* 25 Iowa 210. At the time, then, when the ruling was made, the answer was sufficient.

V. Again, it is said by appellant that the district court was wrong in sustaining appellees' motion to strike a portion of the appellant's reply. That portion of appellant's reply stricken by appellees' motion was to the effect that C. H.  Walker, the surety, did not apprehend that the maker was about to remove from the state or become insolvent, etc. The motion sought to strike such allegation because the same could not be put in issue in this suit. Whether the district court was right or wrong in sustaining the motion we need not and do not decide, for the reason that the portion of the reply not stricken contained a general denial, and thereby put in issue the averments of appellees' answer concerning the apprehensions

of C. H. Walker in that regard. Prejudice, therefore, did not result because that portion of the reply was stricken.

VI. What has just been said concerning the motion directed at appellant's reply may also be said regarding appellees' demurrer attacking the same division of the reply, because, whether right or wrong, no error appears, under the circumstances. A general denial still remained in the reply, and that put in issue the matters covered by the stricken portion thereof.

VII. Appellant claims that the district court erred in overruling his objection to Interrogatory No. 21, asked the witness Harriette W. Haugen in a deposition. Such interrogatory was:

"In the deposition of H. O. Haugen, taken for use in this case, he states that your father, C. H. Walker, 'agreed by letter that he would stay on my note until I was able to sell.' Do you know whether or not your father did in fact write a letter to H. O. Haugen in which any such statement was made?"

"Mr. Senneff [attorney for appellant]: Plaintiff objects to Interrogatory 21 for the reason that the same calls for the conclusion or opinion of the witness, and not a statement of fact, and calls for hearsay testimony; and if for the purpose of impeaching the witness H. O. Haugen, no proper foundation has been laid.

"The Court: Overruled. (Plaintiff excepts.)"

If we concede, without determining, that the question was vulnerable to the objection, yet, in view of the witness's reply, shown by the record, the appellant was not prejudiced. By the  answer, the witness H. O. Haugen was contradicted concerning the time when C. H. Walker's letter was written. To that extent, the answer was material. Perhaps the answer was not entirely responsive. Nevertheless, the witness's answer was not a conclusion or hearsay.

No complaint is made that the answer should have been stricken by motion on the theory that it was not the best evidence.

VIII. An objection is raised by appellant because the district court sustained appellees' exception to Interrogatory 11. There, the following question was asked the witness Kitty Sargeant:

"Did you have any talk with said H. L. Clough [Dr. Clough,

appellees' witness] before his coming to Iowa about what pay, if any, he was to receive for such services?

"Mr. Salisbury [attorney for appellees] : Defendant objects to Interrogatory No. 11 on the ground and for the reason that the interrogatory and the evidence sought to be elicited is immaterial, irrelevant, and not pertinent to the issue in this case, and on the further ground that the evidence sought to be elicited is hearsay, and not tending in any way to impeach our witness Clough."

Prejudice arose, appellant insists, because the district court sustained the objection. Apparently it is appellant's theory that an answer to the interrogatory would have shown the witness Clough's interest·in the·outcome of the litigation.

Clearly, the question involved a collateral issue. Kitty Sargeant was an impeaching witness, used by appellant to discredit appellees' witness Dr. Clough. Under those circumstances, the  interrogatory called for a declaration by Dr. Clough concerning his interest in the suit, which is not admissible. What the situation would be, had the proper foundation been laid for impeachment, we need not now decide, because such is not in the record. Previously this court said, upon the subject under consideration, in *Erickson v. Bell*, 53 Iowa 627, on pages 630 and 631:

"Under the rules of evidence prevailing at common law, the interest of a witness renders him incompetent, and may be shown, to exclude his evidence. Under our statute, a witness is not incompetent by reason of interest, but it may be shown, for the purpose of lessening the credibility of his testimony. * * * The rules relating to the admissibility of evidence showing the interest of a witness are the same at common law and under the statute. A difference arises only as to the effect of the interest, and consequently as to the time when it may be shown. At common law, the court passes upon the evidence, and, if the interest be established, excludes the testimony; under the statute, the evidence goes to the jury, and is considered upon the question of the credibility of the witness. The difference above referred to does not extend to the manner of showing the interest of the witness. Decisions of the courts made at common law must, therefore, determine the question under consideration [whether it was

proper to permit a witness of that character to say that one Thomas had declared he would be a loser if the suit should be decided against the defendant]. It has been often held that the testimony for the purpose of establishing declarations of a witness to the effect that he is interested in the event of the suit is not admissible: it is regarded as mere hearsay evidence.''

Likewise, in *State v. Townsend*, 66 Iowa 741, on page 746, we said:

''The effect of Johnson's testimony was not to contradict anything which Haskins had testified to in his examination in chief, nor did Haskins' statement to Johnson tend to show that the defendant was guilty. It did, perhaps, tend to show that Haskins was biased; but, in showing the bias of a witness, the party against whom he has testified is limited to a cross-examination of the witness. If Johnson could be called to prove Haskins' bias, another witness might be called to prove Johnson's bias, and so on indefinitely.''

Error does not appear at this place.

IX. Complaint was also made because the district court sustained appellees' objection to questions asked the witnesses Almira Gibson and Isabel Clough. Inquiry was made in nearly each instance concerning collateral, immaterial, and irrelevant matters; and, in order not to unduly lengthen this opinion, we conclude by saying, without further discussion, that there is no merit in appellant's propositions. If, in any event, the district court should have permitted the witnesses to answer, no prejudice arose; because the matters inquired about were sufficiently in the record at other places. The district court, then, under all the circumstances, did not abuse its discretion in ruling on this evidence.

Also, there is no merit in appellant's complaint because the district court overruled its objections to a question propounded by appellees to their witness C. A. Walker.

Consideration has been given to all the propositions urged by appellant as to why he should have a reversal on this appeal, the record has been read and carefully studied, and we are convinced that the appellant had a fair trial. Appellees proved the contents and service of the notice aforesaid, and, because the appellant did not sue the maker on the note or permit the surety,

C. H. Walker, to do so, the latter was released, under the statute above mentioned.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.