A. F. BECKER et al., Appellees, v. E. T. RUTE et al., Appellants.

No. 44970.

June 18, 1940.

H. E. Narey, for appellants.

K. B. Welty, for appellees.

Stiger, J.—On April 9, 1937, plaintiffs leased to defendants, appellants, the ground floor of the Central Arcade Building situated in Arnolds Park from May 1 to October 1, 1937, for $3,100, payable as follows: $600 upon the execution of the contract, $1,000 on May 1, 1937, $500 on June 1, 1937, $500 on July 5 and $500 on July 15, 1937. Appellants failed to pay rent due July 5th and July 15th and on July 20, 1937, plaintiffs brought this action for the past due rent.

The lease contains the following provisions:

"That the time and times of making payment of the money, as herein provided, and the performance of each and every agreement, covenant, and provision hereof, on the part

of the second parties, are the essence and important part of this lease, and any failure on the part of the second parties, to comply with any of the terms and conditions of this lease shall make the whole amount immediately due and payable, and the first parties may proceed to collect the same; that upon the violation of any provision of this lease, at the election of the first parties there shall be a forfeiture of this lease, and all of the rights and privileges of the second parties, hereunder, and the first parties may immediately, and without notice terminate this lease, and take immediate possession of the premises. Thereupon, second parties shall immediately quit and surrender the premises to the first parties, and in the event of their failure so to do, the first parties may recover possession thereof by action at law, in Forcible Entry and Detainer of Real Property.''

Appellants, in their answer, admitted taking possession of the premises under the lease, Exhibit A, which was made a part of plaintiffs' petition, and nonpayment of the rent.

As a defense to the action they allege in division one that ''on July 16, 1937, the plaintiffs exercised their right of election above recited and provided in said lease, and served a written notice *of said election and forfeiture* upon these defendants, a copy of said notice being attached hereto, marked Exhibit 'I', and made a part of this answer; that upon receipt of said written notice of election, Exhibit 'I', the defendants vacated said premises and restored possession thereof in the plaintiff and the plaintiff continued in possession of said premises thereafter throughout the unexpired term of said lease, using and appropriating the said premises for his own personal gain and business; that the reasonable rental value of said premises and property for the balance of the said term exceeded the sum of One Thousand and no/100 ($1,000.00) Dollars.'' After admitting that plaintiffs had served notice of forfeiture of the lease, the answer continues: ''That the plaintiff having under the provisions of said lease elected *to cancel* the same and to take possession of said premises, has

waived his right and is estopped from claiming any further rent due from these defendants under said lease.'' (Italics ours.)

In division two of the answer appellants alleged the notice, Exhibit 1, constituted an election to cancel the lease; that the lease contained no provision for cancellation, and when the notice was served they delivered possession of the premises to plaintiffs; that plaintiffs continued in possession for the balance of the term of the lease and operated it as their own business and that the reasonable rental value of the property for the unexpired term exceeded $1,000 and that appellants were entitled to credit of said sum upon the rent due.

Division three of the answer makes the same allegations as to cancellation of the lease and possession by plaintiffs and further states that the plaintiffs had an opportunity to rent the premises for the unexpired term of the lease for $150 per week and if plaintiffs had rented the premises they would have realized an amount more than sufficient to pay the rent due from the appellants.

Another division of the answer alleges that immediately on receipt of the notice appellants surrendered the premises to plaintiffs which transaction amounted to a mutual rescission.

The notice served on appellants, Exhibit 1, was made a part of appellants' answer and introduced in evidence by them.

After an extensive statement of the provisions of the lease and the default in payment of the rent, the exhibit notified appellants that:

''The undersigned have elected, as provided in said Agreement, to cancel, terminate and forfeit said Lease Agreement and all of your rights and privileges thereunder and to take immediate possession of said property; that your rights in said property, upon the completed service of this Notice, will have been terminated and under said Contract, and as therein provided you will forthwith and immediately quit and surrender the premises and all of the equipment and furnishings contained therein and covered by said Contract to the undersigned.

''You are Notified that upon the completed service of

this Notice, that said Lease shall stand terminated, canceled and forfeited, and that thereafter any retention of possession by you shall be considered unlawful, wrongful and in violation of the terms expressed in said Contract.''

The trial court found the lease provided for forfeiture for nonpayment of rent, that plaintiffs declared a forfeiture and were entitled to judgment for rent that had matured prior to the forfeiture. The court rejected the claim of appellants that they were entitled to credit for the value of the use of the premises after the forfeiture. We .concur in the conclusions and judgment of the trial court.

I. Appellants' first proposition that there was no competent evidence of a forfeiture because plaintiffs did not introduce the lease in evidence cannot be sustained. The lease was made a part of the petition, it became a part of the record in the case and, furthermore, appellants admitted in their answer the execution of the lease, Exhibit A, and possession thereunder.

II. Another proposition urged by appellants is that the lease contains a section entitled General Provisions; that the provisions in the lease for payment of rent are not included among the general provisions; that the statement in the lease ''upon the violation of any provision of this lease, at the election of the first parties there shall be a forfeiture of this lease'', refers only to a violation of one or more of the ten general provisions and therefore the lease did not provide for a forfeiture on the ground of nonpayment of rent. This assignment is likewise without merit. The lease provided for a forfeiture upon a violation of ''any provision of this lease.'' The words ''any provision'' include all the terms, covenants and conditions in the contract and manifestly include the provision for payment of rent.

In connection with this assignment appellants urge that the lease provides that any failure on the part of second parties to comply with any of the *terms and conditions* of this lease shall make the whole amount immediately due and payable and

the first parties may proceed to collect the same; that the lease contemplated one remedy for a violation of the "general provisions", that is, the right of forfeiture, and another remedy for a violation of the terms and conditions, that is, the right to declare the whole amount due and payable. We do not so construe the 'contract. Time of performance of "each and every agreement, covenant, and provision hereof, on the part of the second parties" is made "the essence and important part of this lease."

It is quite obvious that the words "terms and conditions" include "each and every agreement, covenant and provision hereof", and upon a violation of any provision of the lease, that is, any terms and conditions thereof, plaintiffs had the right, which they did not exercise, to declare all the rent due, and, in addition, had a right to forfeit the contract and recover the accrued rent.

Appellants also assert the notice of forfeiture, Exhibit 1, was unsigned and therefore did not constitute any evidence of a forfeiture. We do not agree with appellants. The notice was addressed to them and stated that the "undersigned, A. F. Becker and R. M. Becker" elected to forfeit the lease agreement and to take immediate possession of the property and that upon completed service of the notice all rights of the appellants would be terminated.

As above stated, appellants admitted in their answer that plaintiffs had exercised their right of election and served a written notice of forfeiture upon the appellants "marked Exhibit '1', and made a part of this answer, and upon receipt of said written notice of election the appellants vacated said premises and restored possession to plaintiffs." The context showed it was a notice of forfeiture given by plaintiffs and pursuant thereto appellants surrendered possession of the building. The record clearly shows that appellants understood the exhibit constituted a notice of forfeiture to them by plaintiffs. There is no suggestion that the appellants were in any way. prejudiced by the lack of signatures. We are of the opinion

that there was a sufficient notice of forfeiture. See Neeley v. Incorporated Town of Mapleton, 139 Iowa 582, 117 N. W. 981; Cleophas v. Walker, 211 Iowa 122, 233 N. W. 257.

■ III. Another assignment is that the court erred in finding there was a forfeiture by plaintiffs and should have found that appellants abandoned the leased property and were entitled to credit on the rent due for the reasonable rental value of the use of the premises by plaintiffs for the unexpired term. The rule in this state is that if the tenant abandons leased property it is the duty of the landlord to minimize his damages by using reasonable diligence to relet the property. Benson v. Iowa Bake-Rite Company, 207 Iowa 410, 221 N. W. 464. The rule is not applicable to this case because appellants did not abandon the property but surrendered the premises to plaintiffs pursuant to the notice of forfeiture which terminated the lease.

We cannot accept appellants' contention that the notice constituted a cancellation of the lease, or if not a cancellation, then a mutual rescission. The lease contained no provision for a cancellation. However, plaintiffs made no attempt to cancel the contract nor is there any evidence of a mutual rescission. As above stated, the transaction amounted to a forfeiture.

After the forfeiture was completed and the lease thus terminated, appellants had no further right under the lease and plaintiffs were entitled to the rent that had matured at the time of the forfeiture. The judgment is affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, MITCHELL, and HALE, JJ., concur.

MILLER and BLISS, JJ., dissent.

MILLER, J. (dissenting)—I am unable to concur with the views expressed by the majority, and respectfully dissent.

The majority opinion recognizes that the notice of election and forfeiture, whereby the appellee terminated the lease and took immediate possession of the premises, in legal effect ac-

complished what its terms expressed, namely, a forfeiture was effected and the lease was terminated by the service of such notice. I agree with the result so far reached. What I am unable to agree with is the holding that the landlord is entitled to possession, after terminating the lease, and is also entitled to recover the rent for the balance of the term.

When a lease is executed, the landlord, by the lease, gives the tenant the exclusive right to possession and enjoyment of the premises. In Clark v. Strohbeen, 190 Iowa 989, 995, 181 N. W. 430, 433, we state: ''The landlord becomes a trespasser if he enters upon the leased premises, and without the consent of the tenant appropriates possession to himself before the expiration of the term.'' It is the right of possession to the exclusion of the landlord which constitutes the basis for the rent being earned. In the case of Wilson v. Wilson, 220 Iowa 878, 882, 263 N. W. 830, 832, we state: ''It is well settled that in the absence of a contrary agreement, rental is neither earned nor payable until the expiration of the term.'' To the same effect, see Ingram v. Dailey, 123 Iowa 188, 192, 98 N. W. 627. We have also recognized that a tenancy ends at the time fixed in the notice to quit. Fillman v. Sherwood, 192 Iowa 1161, 1164, 184 N. W. 287. The effect of the majority opinion is to hold that where rent is payable in advance, and by reason thereof becomes due before it is earned, the landlord can recover possession of the premises for nonpayment of the rent and can also recover the rent that has not been earned. With this I cannot agree.

The rule announced by the majority is unjust and unfair because it disregards the principle recognized in Wilson v. Wilson, supra, that rental is not fully earned until the expiration of the term. The landlord is entitled to possession of the premises or rent therefor. If he takes possession during the term by evicting the tenant, he is entitled to the rent that is earned up to the time of eviction. I do not think that he is entitled to rent that is not earned at that time. He is entitled to his rent or the possession, but not both.

In 16 R. C. L. 948, it is stated: "It is the well settled general rule that where the eviction by a landlord is of the whole premises this will relieve the tenant from liability for future accruing rents." "Accrued" is often interpreted as meaning "due and payable", and, where rent is due and payable in advance, it is considered as accrued before it is earned. If the eviction occurs after the rent is due and payable, but before it has been earned, there are three rules which have been applied in the various jurisdictions.

In 36 C. J. 317, the three rules are stated as follows: "Where the rent is due and payable in advance at the beginning of each month, quarter, or year during the term, there is a conflict of authority as to the effect of the eviction occurring during such period. In some jurisdictions it is held that the tenant's liability for the rent is not discharged by an eviction occurring after the rent is due, unless the parties agree to the contrary. According to other authorities, the tenant's liability for the rent for such period is discharged by an eviction during the period, and the tenant is not liable for the period during which he occupies the premises, unless he expressly contracts to that effect. In other jurisdictions it is held that the obligation to pay rent ceases at the time of eviction so that the rent will be apportioned according to the period that the tenant retains possession."

It seems to me that the first rule, which the majority opinion applies herein, is harsh and unfair to the tenant. The second rule appears to be harsh and unfair to the landlord. The third rule seems to me to be just and fair to both. I would apply it here.

In the case of Conner v. Warner, 52 Okla. 630, 633, 152 P. 1116, 1117, the judgment appealed from is quoted in the opinion as follows:

" 'The court finds that the plaintiff is the assignee of the lessors' interest under a certain lease of real property, described in plaintiff's petition, and the defendants are the lessee and sureties of said lessee under said lease; that on the 20th

day of August, 1912, there became due the plaintiff from the defendants an installment of rent, amounting to $550; that no part of such sum has been paid; that thereafter, on the 26th day of August, 1912, the plaintiff's assignors, the lessors under said lease, declared a forfeiture for the nonpayment of rent, pursuant to the terms thereof, and immediately took possession of said premises. The court finds that because of said forfeiture, the plaintiff is not entitled to recover the full amount of the installment due, on the 20th day of August, 1912, but is entitled to apportion the same for the time said lessee actually occupied said premises * * *.'"

The Oklahoma court affirmed the judgment. It seems to me that the situation which was there presented to that court is directly analogous to the situation that is presented to us herein. The theory behind the decision, as I read it, is that, where rent is payable in advance, it is payable before it is earned. If the landlord evicts the tenant for failure to pay the rent after it is due, but before it is earned, and takes possession of the premises for the balance of the term, he can only recover from the tenant the proportionate share of the rent which was earned at the time of the eviction. By taking possession, he elects between the right to possession and his right to the rent. He is denied both, but is accorded the right to either. His choice determines the relief to be accorded him.

In this case, the term of the lease was from May 1, 1937, to October 1, 1937. The rent was $3,100 for the term. $1,600 of this rent was due and payable by May 1st and was then paid. $500 was due on June 1st, and was then paid. Two thirds of the rent for the term of five months was due and payable within one month after the term commenced. The balance of the rent was due and payable in July. On July 16th, the landlord forfeited the lease, terminated the tenancy for failure to pay the rent promptly when it was due, and recovered possession. At that time, the tenancy was only half completed. There is evidence in the record to show that the value of the balance of the term at least equalled the amount of rent de-

linquent when the lease was terminated. Such rent was, therefore, due in advance. It was due before it was earned. The appellants, as the tenants, do not question their obligation to pay all rent that was earned when the tenancy was terminated. What they do challenge is their obligation to pay rent that was not earned. Their position is that the landlord, by terminating the lease and recovering possession, elected to take possession in preference to the unearned rent. I think this position should have been sustained. In the case of Reiger v. Turley, 151 Iowa 491, 501, 131 N. W. 866, 870, we state: "The law abhors forfeitures, and will give them effect with reluctance, and only when the right thereto has been clearly contracted for, * * *." This principle should be applied here.

Examination of the cases, cited in support of the three rules reviewed in the foregoing quotation from 36 C. J. 317, demonstrates that the cases which support the third rule are fewer in number than the cases which support the first rule. However, courts have often recognized that mere superiority in the number of decisions does not necessarily determine the sound rule, where a division of authority exists. From the briefs, and from an examination of our decisions, it appears that this court has not heretofore decided which rule should be applied to a situation such as presented by the record herein. We now have to choose. It seems to me that our choice would be better made from considerations of fundamental principles of reason and justice than from mere numerical weight among the decisions. While the rule announced by the majority opinion seems to be supported by the greater number of decisions, I would prefer a rule which seems to be more in accord with fundamental considerations of reason and justice. I would reverse.

BLISS, J., joins in this dissent.