STATE of Wisconsin, Plaintiff-Respondent,

v.

Roy C. MOATS, Defendant-Appellant.

Supreme Court

*No. 88–0431–CR. Argued September 8, 1989.—Decided June 28, 1990.*

■■■■■■■■■■■■■■

(Also reported in 457 N.W.2d 299.)

For the defendant-appellant there were briefs by *Terry Evan Williams,* and *Williams Law Office,* Delavan, and oral argument by *Terry Evan Williams.*

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

STEINMETZ, J. The issue in this case is whether a constitutionally tainted confession may provide the sole basis at a preliminary hearing for binding over for trial a criminally charged defendant. If unconstitutionally obtained evidence is the sole evidence used at the preliminary examination and the defendant is bound over for trial, the purpose of the hearing is not affected.

We hold that the unconstitutionally obtained confession can be used, as here, at the preliminary examination.

This issue was certified to this court by the court of appeals under sec. 809.61, Stats., and we accepted. Subsequently, by order dated December 15, 1989, we took jurisdiction over the six noncertified issues in this case. The noncertified issues are decided based on the parties' briefs filed in the court of appeals.

The defendant appeals from interlocutory orders and a judgment of conviction on one of two counts charged of first degree sexual assault. His sentence of 15 years in prison was entered on June 8, 1987, in the circuit court for Walworth county, Honorable James L. Carlson, presiding.

This case is unique in that Moats raises a fifth amendment, rather than a fourth amendment challenge to the use of constitutionally tainted evidence in a preliminary hearing.[1] The crux of Moats' argument is that a constitutionally tainted confession is not sufficient evidence with which to find probable cause at a preliminary examination and to justify his bindover for trial.

The facts are undisputed. In August and September, 1985, Roy C. Moats, the defendant, stayed with C.C. and her five-year-old daughter, B.J.C., in Whitewater. While there he helped care for B.J.C. and stayed with B.J.C.

---

[1]The Fifth Amendment to the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

while C.C. was in the hospital giving birth to her second child. Two or three days after she returned home Moats left.

On October 8, 1985, C.C. spoke to Officer Gary Sterling of the Whitewater Police Department. He arranged for the child to be taken to Whitewater Family Practice where she was examined by Dr. Mark Dickmeyer on October 9, 1985. The same day B.J.C. gave a videotaped statement to Officer Sterling and a Walworth County Department of Social Services worker, Theresa Hanson, at the district attorney's office. The child alleged that Moats had sexually assaulted her. Subsequently, a criminal warrant and complaint were issued charging Moats with two counts of first degree sexual assault, and he was then taken into custody.

After receiving the *Miranda*[2] warnings from Officer Sterling, Moats said: "Maybe I better talk to an attorney." Officer Sterling ended his interrogation at that point. Moats was then transferred to the Walworth county jail where he was further questioned by another officer who was unaware that the defendant had said he wished to speak with an attorney. Moats testified he thought the second officer was his attorney. The defendant, according to doctors who examined him and testified at his competency hearing, is borderline retarded and cannot read but was determined to be competent to stand trial.

Officer Swart, the second officer to talk to the defendant, was the only witness at the preliminary hearing held before the Honorable Robert D. Read. The defendant's second statement to Officer Swart was accepted into the record and constituted the only evidence offered against the defendant. In the second state-

[2]*Miranda v. Arizona,* 384 U.S. 436 (1966).

ment, the defendant admitted having sexually abused the child.

The defendant was bound over for trial. At a subsequent evidentiary hearing held April 2, 1987, a defense motion to suppress the confession as violative of *Edwards v. Arizona,* 451 U.S. 477 (1981), was entertained and denied.

The state did not introduce defendant's statements for use in its case-in-chief, and the defendant did not testify at trial. In its brief and argument to this court, the state conceded that the defendant sufficiently invoked his right to an attorney and that the subsequent questioning of the defendant violated *Edwards.* The state, however, does not concede that the statement of the defendant was involuntary.

We acknowledge at the outset that the state requested that this court also rule on the court of appeals decision in *State v. Sorenson,* 135 Wis. 2d 468, 400 N.W.2d 508 (Ct. App. 1986) *rev'd on other grounds,* 143 Wis. 2d 226, 421 N.W.2d 77 (1988), which held that the use of evidence at a preliminary examination in violation of the statutory rules of evidence required that the trial and resulting conviction be declared a nullity and the case be remanded for a new preliminary examination. We decline to rule on *Sorenson,* however, because the use of erroneously admitted evidence under the statutory rules of evidence to gain bindover at the preliminary examination stage and its accompanying remedy are not at issue in this case. This issue has not been briefed, and we prefer to rule when the issue is directly before us. The court is also concerned that if it rules without briefs, it may be adding to interlocutory appeals. If after a fair trial a defendant is convicted which would make inconsequential the evidentiary errors in the preliminary examination, the defendant's attorneys would believe it

necessary to move for discretionary appeal before the trial would begin or forego the errors at the preliminary. This may cause an administrative problem for the court of appeals, and it is preferable that these issues be fully briefed and argued before deciding them.

In the case now before us, Moats does not allege that admitting his statements at the preliminary hearing violates any of the rules of evidence. Moats appeals the use of the evidence only as to its unconstitutionality. The gist of his argument is that:

> [To rule] that the confession's admission was proper would be to grant the Rules of Evidence a position of supremacy above Amendments 5, 6, and 14 of the United States Constitution and Article 1, Secs. 1, 7 and 8 of the Wisconsin Constitution. As the Wisconsin Constitution controls the Statutes, and the United States Constitution controls both, constitutionally guaranteed rights may not be subordinated to statutory rules. The rules of evidence are owed no greater deference than are fundamental constitutional rights.

This reasoning is not persuasive.

The right to a preliminary hearing is solely a statutory right. This court has stated that " '[t]he right to such an examination stems purely from statute and is not considered a constitutional right.' " *State v. Dunn,* 121 Wis. 2d 389, 394, 359 N.W.2d 151 (1984) (quoting *State ex rel. Klinkiewicz v. Duffy,* 35 Wis. 2d 369, 373, 151 N.W.2d 63 (1967)). The preliminary examination is intended to be a summary proceeding used to determine if there is probable cause to believe a felony has been committed and probably committed by the defendant. Section 970.03(1), Stats. *See also State v. Hooper,* 101 Wis. 2d 517, 305 N.W.2d 110 (1981).

The preliminary hearing is not a trial. The presiding judge therein is called upon only to determine the plausibility of a witness's story and whether, if plausible, the evidence would support bindover. " ' "The preliminary hearing . . . is not the proper forum to debate and determine issues as to credibility and weight of evidence once essential facts as to probability have been established." ' " *Id.* at 545. (Citations omitted.) Credibility and weight of the evidence are left exclusively to the jury to determine at trial. *Dunn,* 121 Wis. 2d 389.

██ The appellate review of the bindover is de novo. "[T]his court may examine the factual record *ab initio* and decide as a matter of law whether the evidence constitutes probable cause." *State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601 (1981).

The Wisconsin Rules of Evidence found in chs. 901 through 911, Stats., apply in preliminary examinations. *Mitchell v. State,* 84 Wis. 2d 325, 267 N.W.2d 349 (1978). No special exceptions to these rules exist to otherwise allow for admissibility at a preliminary hearing. *See Id.* (Refusal by the court to adopt a rule permitting the admission of hearsay evidence at the preliminary hearing.)

██ The statutory rules of evidence set forth in chs. 901 to 911, Stats., provide the sole guidelines for exclusion of evidence at the preliminary hearing. If the statutory rules of evidence do not exclude the statement at the preliminary examination, a defendant cannot seek exclusion for any other reason.

This conclusion is based on the clear language of sec. 971.31(5)(b), Stats. That statute provides:

> In felony actions, motions to suppress evidence or motions under ss. 971.23 to 971.25 or objections to

the admissibility of statements of a defendant shall not be made at a preliminary examination and not until an information has been filed.

The defendant's statement did not qualify for any exclusions under the statutory rules of evidence. Section 971.31(5)(b), Stats., clearly states that objections to the admissibility of a defendant's statements, which include a constitutionally tainted confession, shall not be raised until later in the prosecutorial process, *i.e.*, not until the point after which probable cause to bindover in the preliminary examination has been found such that an information may be drafted.

Thus, sec. 971.31(5)(b), Stats., effectively prevents the trial court from excluding evidence presented at the preliminary hearing unless that evidence could not be admitted under the Wisconsin Rules of Evidence set forth in chs. 901 to 911. At a preliminary hearing, then, the rules of evidence do not prevent the prosecutor from using a statement such as the defendant's constitutionally tainted confession to establish probable cause for binding over a defendant for trial, and a trial court can rely on such a statement in deciding that probable cause exists for a bindover. It would be ethically suspect if a prosecutor used a confession known to be unconstitutionally obtained when that was the only evidence in the case available for trial. Such was clearly not the case.

The district attorney did not know the eventual court ruling on the admissibility of the confession at the time it was used at the preliminary hearing. By statute that ruling is not appropriate until the case is before the trial court.

The dissent ignores the fact that there was a complete and fair trial at which the defendant was found guilty beyond a reasonable doubt without the use of the

tainted confession. The exception requiring exclusion of such evidence must therefore be found within the United States Constitution or the Wisconsin Constitution. We hold that neither source contains such a requirement.

The United States Constitution allows a prosecutor in a preliminary examination to establish probable cause with evidence obtained in violation of the constitution. Use at the preliminary hearing of such tainted evidence does not violate the United States Constitution because the proper remedy for unconstitutional acquisition of evidence is exclusion at trial, not suppression in a probable cause proceeding. Language found in *United States v. Blue,* 384 U.S. 251, 255 (1966) (reviewing a grand jury), clearly enunciates the above view:

> Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial.

The United States Constitution does not forbid the admission at a preliminary hearing of evidence derived from an improper lineup. *Hensley v. Carey,* 633 F. Supp. 1251, 1254 (N.D. Ill. 1986) (citing Rule 5.1(a) of the Federal Rules of Criminal Procedure for the proposition stated, *supra,* that "[o]bjections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination." *See also Giordanello v. United States,* 357 U.S. 480, 484 (1958)).

A prosecution is not abated or barred even when tainted evidence has been submitted to a grand jury.[3] *United States v. Rundle,* 383 F.2d 421, 424 (3d Cir.

[3]Contrary to the view presented by the dissent, we consider the comparison made between the preliminary examination and the grand jury under these circumstances to be valid. Both proce-

1967). Indeed, the United States Supreme Court in *Costello v. United States,* 350 U.S. 359, 361–62 (1956) stated that:

> The Fifth Amendment provides that federal prosecutions for capital or otherwise infamous crimes must be instituted by presentments or indictments of grand juries. But neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act.

In *United States v. Grosso,* 358 F.2d 154, 163 (3d Cir. 1966), the court held: "It is well established that an indictment is not open to challenge on the ground that the evidence presented to the grand jury was either inadequate or incompetent." The *Costello* Court offered the following rationale:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello,* 350 U.S. at 363. This same Court concluded that the right to a fair trial was not assured through the delay that invalidating an indictment would cause.

---

dures share the ultimate purpose of avoiding prosecution of unfounded charges against an alleged criminal defendant.

> Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Id.* at 364.

The Wisconsin Constitution,[4] like the fifth amendment, does not dictate the kind of evidence that must necessarily be presented at a pretrial procedure. Likewise, Wisconsin case law stands in accord with the Court in *Blue* in stating that the proper remedy available to Moats under the circumstances is suppression at trial.

In *State v. Williamson,* 113 Wis. 2d 389, 396–98, 335 N.W.2d 814 (1983), the defendant argued that the facts used in the complaint, which was the only source of information available at his initial appearance on a misdemeanor charge, did not constitute probable cause because the facts did not satisfy the requirements of a constitutional stop and frisk. This court stated that:

> The problem with this reasoning is that it is based on the premise that a determination of proba-

---

[4]Section 7 of Article I of the Wisconsin Constitution provides as follows:

**Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

ble cause requires the State to show the evidence was obtained legally. This is not the law.

. . ..

Our system of justice leaves the question of whether the evidence was obtained constitutionally to be determined in a suppression hearing following the initial appearance in a misdemeanor case . . .. Evidence which is obtained through unconstitutional means may be inadmissible at trial but still used as the foundation for a complaint . . .. It follows that a decision as to whether there is probable cause to believe that a crime has been committed does not require consideration of whether the evidence was seized in a constitutional manner. (Footnote omitted.)

Section 971.31(5)(b), Stats., which precludes challenges to statements such as that of the defendant's until the prosecutor files an information, a step that occurs after a preliminary examination takes place. This procedural sequence demonstrates that a court does not err in relying on unconstitutionally obtained evidence in deciding whether probable cause exists for bindover.

Moats also argues unpersuasively that the use of tainted evidence at his preliminary hearing resulted in a jurisdictional defect. The trial court's subject matter and personal jurisdictions do not depend on the existence of a preliminary examination. The complaint, which is not challenged, sufficiently established the jurisdiction of the trial court. Any defects at the preliminary hearing could not therefore adversely affect the court's jurisdiction at a later stage of the proceeding.

In *State ex rel. Zdanczewicz v. Snyder,* 131 Wis. 2d 147, 152, 388 N.W.2d 612 (1986), the court held that the existence of a valid complaint supported by probable cause defeated any claim by the defendant that the circuit court lost personal jurisdiction over him due to an

illegal arrest. *See also State v. Smith,* 131 Wis. 2d 220, 240, 388 N.W.2d 601 (1986); *State ex rel. Cullen v. Ceci,* 45 Wis. 2d 432, 443, 173 N.W.2d 175 (1970).

Other states have rejected the defendant's position. In *People v. Alcala,* 36 Cal. 3d 604, 205 Cal. Rptr. 775, 685 P.2d 1126, 1138–39 (1984), the California Supreme Court stated:

> Defendant suggests that a failure of evidence at the preliminary hearing is a jurisdictional defect. Such, of course, is not the case; were it so, the jurisdictional exception would swallow the rule.
>
> Prior to *Pompa-Ortiz, People v. Elliot* (1960) 54 Cal. 2d 498, 6 Cal. Rptr. 753, 354 P. 2d 225 had established that *all* material errors in pretrial commitment proceedings were 'jurisdictional,' since they meant defendant had been 'illegally committed.' In overruling *Elliot, Pompa-Ortiz* rejected the prior case's 'uncritical use of the term "jurisdiction" ' in the context of matters correctable by pretrial writ, rather than to mean 'legal power to hear and determine a cause.' Under *Pompa-Ortiz,* only an absence of this latter kind of jurisdiction can furnish grounds for reversal per se after a fair trial. (27 Cal. 3d at pp. 528–29, 165 Cal. Rptr. 851, 612 P.2d 941).
>
> An evidentiary deficiency at the preliminary hearing does not meet that standard. The statutes have long provided that lack of probable cause at the preliminary hearing is waived *for all purposes* if not timely pursued prior to trial. (secs. 995, 996, 999a *Elliot, supra,* 54 Cal.2d at p. 505, 6 Cal. Rptr. 753, 354 P.2d 225). (Emphasis in original.)

The Idaho Supreme Court rejected a defendant's postconviction challenge to his preliminary hearing because of the use of inadmissible evidence at the preliminary hearing. *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, 1343, *cert. denied,* 461 U.S. 934 (1983).

A preliminary examination serves " 'to prevent hasty, malicious, improvident, and oppressive prosecutions.' " *State v. Dunn,* 121 Wis. 2d 389, 359 N.W.2d 152 (1984) (quoting *Thies v. State,* 178 Wis. 98, 103, 189 N.W. 539 (1922)). The jury verdict of guilt in this case demonstrates that the prosecution did not fall into the category of prosecutions the preliminary examination was designed to avoid. If an appellate court concluded that some trial error merited reversal of a conviction, a defendant's remedy is a new trial, not a new preliminary hearing. The jury verdict indicates that if a new preliminary examination were ordered as a remedy for a defective one despite the existence of a guilty verdict based on admissible evidence, the prosecutor would simply return to the preliminary examination with the admissible evidence produced at trial and reestablish probable cause for a new trial that would yield another guilty verdict. This would require a five-year-old sexual assault victim to testify twice, at the preliminary examination and at the trial, which would be traumatic for her. She has already suffered the emotional effect caused by the defendant's attack. To require her to testify again when the conclusion is foregone because the defendant was found guilty in a fair trial would be unnecessarily cruel.

The first noncertified issue is related factually to the certified issue in that it also concerns the inculpatory statements taken by Officer Swart during the second recorded custodial interrogation session. The issue is whether the trial court erred in ruling that the defendant's confession made to Officer Swart was admissible in the state's case-in-chief and for impeachment purposes.

This issue arises out of a notice of motion and motion to suppress statements of the defendant. The motion asserted that any incriminating statements made

by the defendant during custodial interrogation were elicited in violation of the defendant's *Miranda* rights. The motion also asserted that the incriminating statements were compelled. The motion was brought pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, secs. 1, 7, 9 and 11 of the Wisconsin Constitution.[5]

Pursuant to the motion filed, a *Goodchild*[6] hearing was held. At the close of the hearing, the trial court found that Moats' testimony was unbelievable. The trial court also found under the totality of the circumstances that the defendant's request for counsel was ambiguous. In light of the ambiguous request, the trial court found that Officer Swart's interrogation complied with *Miranda* in that each time the *Miranda* rights were read to the defendant, his original, ambiguous request was clarified. The trial court also found based on the totality of the circumstances that there was no police coercion which induced the defendant to make his inculpatory statements. The trial court found that in all circumstances the statements made by the defendant to Officer Swart were beyond a reasonable doubt the product of the free and uncoerced will of the defendant. The trial court then ruled that the state could use the statements to impeach the defendant.

The state then requested a ruling by the court as to the alleged violations of *Miranda* and *Edwards*. The trial court repeated its findings on the ambiguity of the defendant's request and clarification thereof through use of repetition of the *Miranda* rights. Based on the pre-

---

[5]The defendant raises arguments in his brief to the court of appeals which are relevant only to the fifth and sixth amendments. We therefore limit our discussion to those concepts of law.

[6]*State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

ponderance of the evidence and weight of the testimony, the trial court concluded that the defendant's waiver of his *Miranda* rights was voluntary and ruled that the state could also use the statements in its case-in-chief.

The state did not use the statements taken during the interrogations in its case-in-chief and concedes that they were taken in unknowing violation of the defendant's rights under *Miranda* and *Edwards*. The state does not concede that the statements were involuntary. The defendant did not take the witness stand in his own behalf at his trial. The defendant now asserts that his statements were compelled and that he was prejudiced by the trial court's rulings on admissibility because he was unable to take the witness stand in his own behalf knowing that the inculpatory statements would be used to impeach him. Based on the state's concession and failure to use the confession in its case-in-chief, the court concludes without commenting further that the defendant was not prejudiced by the trial court's ruling in this regard. The true focus of this issue, then is whether the defendant's statements were compelled.

■

Both the United States Supreme Court and this court have held that a constitutionally tainted confession may be used to impeach a defendant who chooses to testify in his own behalf at trial. *See Michigan v. Harvey,* — U.S. —, 110 S.Ct. 1176 (1990) (a statement taken in violation of the sixth amendment rule of *Jackson* may be used to impeach a defendant's testimony); *Oregon v. Hass,* 420 U.S. 714, 723–24 (1975); *Harris v. New York,* 401 U.S. 222, 225–26 (1971) ; *State v. Mendoza,* 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980). The exception is made for compelled or involuntary testimony which is inadmissible at trial for any purpose. *New Jersey v.*

*Portash,* 440 U.S. 450, 459 (1979); *Mendoza,* 96 Wis. 2d at 118–19.

The question of the voluntariness of the defendant's confession requires application of constitutional principles to the historical or evidentiary facts as found by the trial court. As such, voluntariness is a question of constitutional fact, and the court is bound to make an independent review of the record to determine whether this defendant's confession was, indeed, voluntarily procured. *State v. Turner,* 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987); *see also State v. Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457 (1984).

■

The test of voluntariness of a confession requires an independent review of whether the defendant's statements "were the product of his free and rational choice." *Greenwald v. Wisconsin,* 390 U.S. 519, 521 (1968). This determination is based upon the totality of the circumstances surrounding the statements. *Id.*

■

A review of the record reveals that under the totality of the circumstances Officer Swart did not compel the defendant to make his inculpatory statements. The record makes clear that before each statement was taken, Officer Swart read and reviewed with the defendant his *Miranda* rights. Officer Swart also gained the defendant's assurances that he was comfortable in the interrogation room. Although the defendant claimed at the *Goodchild* hearing that he was tricked into believing that Officer Swart was his attorney, the record shows that Officer Swart clearly identified himself as a member of the Walworth county sheriff's department. Officer Swart also repeatedly asked the defendant whether he wanted an attorney and whether he wanted Officer Swart to call an attorney for him.

Since it is determined that the defendant's statements were not compelled, it is also determined that the defendant was not prejudiced by the trial court's ruling that the inculpatory statements were admissible to impeach him should he have decided to take the witness stand. Here, the defendant chose not to take the witness stand and the inculpatory statements were therefore never admitted into evidence by the state.

The second noncertified issue is whether the information filed against the defendant was multiplicitous and placed the defendant in double jeopardy in violation of the Fifth Amendment to the United States Constitution and Article I, sec. 8 of the Wisconsin Constitution. The general problems of multiplicity and the underlying prohibition against double jeopardy have been discussed at length in *State v. Rabe,* 96 Wis. 2d 48, 291 N.W.2d 809 (1980) and *Harrell v. State,* 88 Wis. 2d 546, 277 N.W.2d 462 (Ct. App. 1979) and need not be repeated here.

The issue of multiplicity now before this court has already been discussed as it relates to allegations of sexual assault in *State v. Eisch,* 96 Wis. 2d 25, 291 N.W.2d 800 (1980) and *Harrell.* Based on a review of the principles in *Rabe* and the facts of *Eisch* and *Harrell,* we conclude that the facts in this case are sufficiently distinct in time and type such that appeal on the basis of multiplicity is groundless.

The third issue presented asks whether the trial court erred in refusing to suppress the child's mother's hearsay testimony. At trial, over defense counsel's objection, the child's mother was permitted to give hearsay testimony concerning what B.J.C. told her the defendant had done to her. It is unclear from the mother's testimony exactly when her daughter told her of the alleged

95

assaults. The mother testified that B.J.C. told her about the incidents within the week after the defendant left their house, which was two or three days after she returned from the hospital or roughly between September 23–30, 1985. The defendant claims that the child may not have revealed the assaults to her mother until a few days before the mother initially talked to Officer Sterling on October 8, 1985. The defendant therefore calculates that B.J.C. may first have mentioned the assaults to her mother as late as two weeks after the final incident. The defendant therefore argues that it was error for the trial court to admit the hearsay evidence under the excited utterance exception to the hearsay rules.

■The excited utterance exception to the hearsay rule is codified at sec. 908.03(2), Stats., which provides:

> **908.03 Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . ..
>
> **(2)** EXCITED UTTERANCE. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

The decision whether to admit a hearsay statement under the excited utterance exception is within the discretion of the trial court. This court will not disturb this determination unless the record shows that the ruling was manifestly wrong and an abuse of discretion. *Muller v. State,* 94 Wis. 2d 450, 289 N.W.2d 570 (1980). We hold that the trial court in this case did not abuse its discretion when it admitted into evidence as an excited

utterance the information given by this five-year-old to her mother.

The excited utterance exception to the hearsay rule is based in the spontaneity of the statements and the stress of the incident which endow the statements with the requisite trustworthiness necessary to overcome the general rule against admitting hearsay evidence. *State v. Padilla,* 110 Wis. 2d 414, 418, 329 N.W.2d 263 (Ct. App. 1982), *rev. denied,* 111 Wis. 2d 704, 333 N.W.2d 729 (1983). The time between the triggering event and the utterance is the key factor. However, this court has said that "time is measured by the duration of the condition of excitement rather than mere time elapse from the event or condition described." *Muller,* 94 Wis. 2d at 467 (citation omitted). Statements made by a declarant will be admitted where indications are that he or she is still under shock of injuries or other stress due to special circumstances. *Id.* A broad and liberal interpretation governs the excited utterance exception as applied to young children because such children will tend to repress the stressful incident, will report the incident only to the mother and will be less likely than adults to consciously fabricate the incident over a period of time. *See Padilla,* 110 Wis. 2d at 419, 422 (testimony offered by the mother of a nine-year-old assault victim who learned about the incident three days afterward found admissible as an excited utterance); *see also State ex rel. Harris v. Schmidt,* 69 Wis. 2d 668, 230 N.W.2d 890 (1975) (statement of five-year-old to mother one day after incident and statement to perpetrator's probation officer 15 days after incident were admissible testimony under the excited utterance exception).

The alleged victim in this case is a five-year-old child. The assaults allegedly occurred while the defendant was living with the child and her mother. The last incident allegedly occurred while the child's mother was in the hospital. The mother returned home and the defendant left the home two or three days later. The mother testified under oath that she recalled learning about the assaults within one week after the defendant left her home. Considering the tender age of the child and circumstances under which the assaults allegedly occurred, we conclude that the trial court did not err in finding the requisite indicia of trustworthiness within this testimony, and we uphold its admissibility as properly falling within the excited utterance exception to the hearsay rule.

The fourth issue presented arises out of a juror's failure to appear on the second day of trial, April 22, 1987. The court denied defendant's motion for mistrial. No evidence was heard and no proceedings were conducted on the day the juror was absent. The trial resumed on April 24, 1987. At that time it was learned that the juror had given a false reason for her absence. The juror indicated that she actually failed to appear because she was sick and her illness was "made worse" by the trial. Upon her return, the trial court conducted a separate voir dire of the juror and received her answer that she could continue with and decide the case based on the facts and law presented using her independent judgment to reach her own conclusion. The court indicated satisfaction with her answers and ability to impartially decide the case.

The prosecutor objected and the trial court sustained the objections when defense counsel attempted, first, to question the juror about the reason behind her

absence and, second, when defense counsel attempted to elicit from the juror whether she had already decided the defendant's guilt. The defendant now asserts that he was precluded from making any meaningful inquiry into the true situation and that the state's objections and the trial court's actions constituted avoidance of the truth in order to avoid mistrial, a violation of fundamental fairness and an abuse of discretion.

A criminal defendant in a state court is guaranteed an impartial jury by the United States Constitution. *Duncan v. Louisiana,* 391 U.S. 145 (1968) and the Wisconsin Constitution, Article I, sec. 7. Voir dire serves as the mechanism for ensuring the impartiality of the jurors. *United States v. Miller,* 758 F.2d 570, 571 (11th Cir.) (Per curiam), *cert. denied,* 106 S.Ct. 406 (1985). "*Voir dire* 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.' " *Ristaino v. Ross,* 424 U.S. 589, 594 (1976); *Hammill v. State,* 89 Wis. 2d 404, 408, 278 N.W.2d 821 (1979). The exercise of discretion will not be disturbed unless it is abused or a rule of law is violated. *Hammill,* 89 Wis. 2d at 408.

We conclude that the trial court did not abuse its discretion in refusing to allow Moats' attorney to question the juror on whether she had predetermined the case. The trial judge asked the proper protective question of the juror. The juror responded that she could fairly, impartially and independently decide the case on its merits. The trial court was satisfied with the juror's responses and found them to be sufficient assurance that the defendant would continue to be tried by an impartial jury.

The fifth noncertified issue raises the question of ineffective assistance of counsel. The defendant's trial began on April 21, 1987. The defendant's attorney, Peter J. Heflin, did not appear at the set time due to an unexpected scheduling conflict. A colleague, Attorney Kaiser, was sent and specially appeared to represent the defendant and request a continuance. The court denied the request for continuance and immediately authorized the issuance of a warrant for defense counsel for contempt of court. The trial judge required the defendant and Attorney Kaiser to proceed to voir dire of the jury.

Attorney Heflin was absent throughout voir dire questioning conducted by the court and state. When Attorney Heflin arrived, he conducted an extensive voir dire for the defense. Attorney Heflin also objected to voir dire having been started without him. Proceedings were then recessed to the judge's chambers where the judge found Attorney Heflin in summary contempt under sec. 785.03(2), Stats.[7] At that time, the court stated its intention to impose a monetary sanction but withheld the specific sanction pending the close of the trial to determine what caused the delay and whether any further problems with punctuality would arise. The defendant asserts that he was deprived of effective assistance of counsel where the trial court began voir dire in the absence of his trial attorney and where the court held the contempt penalty open throughout the trial.

In order to show ineffective assistance of counsel, the burden falls to the defendant to prove both that his trial counsel's conduct was deficient and that the deficient performance prejudiced his defense. *Strickland v.*

---

[7]In *Gower v. Circuit Court for Marinette County,* 154 Wis. 2d 1, 452 N.W.2d 354 (1990), this court held that tardiness is not grounds for summary contempt.

*Washington,* 466 U.S. 668, 687 (1984); *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687. Both the performance and the prejudice components are mixed questions of fact and law. *Strickland,* 466 U.S. at 698. The trial court's findings of fact will not be disturbed unless clearly erroneous. *Pitsch,* 124 Wis. 2d 628, 634. The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently. *Id.*

Review of the performance prong may be abandoned "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice . . .. " *Strickland,* 466 U.S. at 697. The burden is on the defendant under the prejudice test to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Id.* at 694.

■

At the outset of the review of the defendant's ineffective assistance claim, we note a deficiency in its presentation in that the defendant has failed to create a posttrial factual record with respect to trial counsel's performance from which this court could take its review. *See State v. Mosley,* 102 Wis. 2d 636, 657, 307 N.W.2d 200 (1981). Even upon review of the pretrial and trial record before us, we conclude that the defendant has not met his burden of showing prejudice to his defense by his trial counsel's failure to attend voir dire conducted by the trial court and state. Here, the defendant had assis-

tance of one of Attorney Heflin's colleagues during Heflin's absence. The record indicates that this substitute counsel viewed and took notes of the voir dire for Attorney Heflin. Once defendant's trial counsel arrived, he was given full opportunity to question potential jurors not already excused for cause by the court. The record indicates that Heflin was allowed to and did duplicate many of the questions already asked of potential jurors. Trial counsel also participated in exercising Moats' strikes of prospective jurors from the panel following voir dire. Moats makes no affirmative showing that the actions of his trial counsel in this respect acted in any way to undermine confidence in the outcome of his trial.

Also, Moats fails to show how the contempt finding prejudiced his defense. No specifics are offered to prove how the contempt ruling interfered with counsel's ability to act as counsel such that the outcome of the trial could be said to have been rendered unreliable. To the contrary, our reading of the record reflects vigorous representation by trial counsel.

The final issue for review as presented by the defendant is whether evidence of prior sexual assaults upon the child victim by other perpetrators should have been admitted into evidence. Arguments raised on this issue reveal two distinct questions for review. First, whether the circuit court abused its discretion when it refused to admit evidence that B.J.C. made prior untruthful allegations of sexual assault. We conclude that the trial court did not abuse its discretion because the evidence presented did not constitute a showing that prior allegations of sexual assault as alleged by B.J.C. were false.

The second question within the broad issue presented is, even if the prior allegations are truthful,

whether the trial court's refusal to admit evidence of prior sexual assaults perpetrated against B.J.C. violated the defendant's constitutional rights to a fair trial, to confront witnesses and to present evidence. In accord with our decision in *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990), we conclude that Moats was denied his constitutional rights when the trial court prohibited introduction of prior sexual assaults perpetrated upon B.J.C. for the limited purpose of establishing an alternative source for her sexual knowledge.

The facts surrounding these particular arguments are lengthy and somewhat confusing. They begin with the defendant having raised a pretrial notice of motion and motion in limine No. 1.[8] This motion raised both a statutory basis for admitting evidence of B.J.C.'s prior sexual experiences under sec. 972.11(2)(b)3, Stats., and raised constitutional arguments alleging violation of the defendant's rights to a fair trial and to confront witnesses and present evidence as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, secs. 7 and 8 of the Wisconsin Constitution. The affidavit accompanying the motion asserted that upon information and belief, both an audio and videotape of a social services interview of B.J.C. show that she indicated that her Uncle Rodney [identified as Ronald Messier] and another man

---

[8]The admissibility of evidence under secs. 940.225 or 948.02, Stats., must be determined by the circuit court in a pretrial motion pursuant to sec. 971.31(11). Section 971.31(11), provides:

 **971.31. Motions before trial. . . .**
 **(11)** In actions under s. 940.225 or 948.02, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial.

she identified as Mark or "Mud" [apparently Marvel Clements, Jr.] had previously sexually assaulted her. The affidavit stated that the child described the prior sexual assaults as penis to vagina assaults.

A motion hearing was held. The child victim and her mother were not present for questioning at the motion hearing despite the defendant's good faith efforts to contact and serve them. At the outset of the hearing, the defendant and state announced that they stipulated to the fact that two other men had assaulted the child at about the same time as the defendant. Of the stipulation, the state asserted that "the defendants were charged and they were convicted. Certainly the state held to that and I believe those records will be made public record. And we agree the victim in this case was sexually assaulted by a Ronald Messier and a Marvel Clemmons (phonetic) on one occasion right around the same period as this."

The trial judge accepted the stipulation and the parties presented their legal arguments. The defendant specifically argued that without knowledge of the prior assaults on the child by two others the jury would simply assume that she got her detailed knowledge of sex acts from her contact with Moats. Without conceding the point, the defendant argued that whether the prior allegations of sexual assault were truthful or untruthful was irrelevant because, in certain cases, the rape shield statute had to yield to a defendant's constitutional rights. According to the defendant, this case presents such a situation.

The trial court denied the motion in limine stating that the defendant had not raised the factual basis necessary to make his offer of proof under *Padilla*, 110 Wis. 2d 414. The trial court stated that *Padilla* required a showing of untruthfulness and similarity of factual context under sec. 972.11, Stats., in order to admit the evi-

dence and that, under the totality of the circumstances, the defendant presented no factual evidence of untruthfulness which warranted admitting the evidence of the victim's prior sexual experiences.

The defendant then attempted to clarify the stipulation saying that the offer of proof was the stipulation of prior sexual experiences which were similar in nature to that with which Moats was charged. The state denied that it intended to stipulate to the similarity of the acts, stating that it only stipulated to the fact that B.J.C. had been sexually assaulted by others during or near the same time period.

Apparently believing that he had lost the factual basis to his legal argument, the defendant requested a chance to put in an offer of proof. The court denied this request and repeated its ruling that the defendant had not raised the factual basis necessary to overcome the exclusion of the evidence under the statute. The defendant then requested the chance to bring the child in for a *Padilla* hearing[9] to prove the basis of her knowledge. This request was denied. Finally, the defendant requested permission to call the witnesses he subpoenaed

---

[9]*State v. Padilla,* 110 Wis. 2d 414, 329 N.W.2d 263 (Ct. App. 1982). In *Padilla* the court of appeals reviewed the two separate claims that are now raised by *Moats.* First, the statutory claim in which that court found no evidence of prior untruthful allegations of sexual assault. *Id.* at 426–27. Second, the constitutional claim. In order to raise the constitutional claim, *Padilla* required two showings: that the complainant had prior sexual contact with a person who is not the defendant and that the prior sexual contact gave the complainant the type of sexual knowledge as is alleged against the defendant. *Id.* at 429; *see also Pulizzano,* 155 Wis. 2d at 647–648, 651–652. In that the circuit court in this case repeatedly stated that *Padilla* required a showing of untruth and similarity of assault, it is clear that the two separate claims were confused by the court.

105

regarding B.J.C. "if the facts which I assume stipulated to were not stipulated." The court answered that "[t]hose facts were stipulated and insufficient as I ruled." When the prosecutor asked if this were the court's ruling "even if they [the prior assaults] are similar in nature," the court answered, "Sure. Okay."

At trial during the child's testimony, the defendant renewed his motion outside the hearing of the jury in an attempt to present the past incidents. The defendant argued that it was apparent in the child's testimony that she had some detailed knowledge of sexual acts. The defendant therefore requested permission to show prior sexual acts through the witness in order to preserve his constitutional rights or impeach her on her testimony.

Again the motion was denied. The court cited B.J.C.'s lack of confusion and unwaivering testimony accusing the defendant and her showing of a lack of detailed knowledge of sexual matters, based on her simple terminology and mere pointing, as grounds for the denial. The judge also stated that the evidence code and the Rape Shield Act prohibited such cross-examination and the other acts perpetrated were not material or relevant. At trial during this particular motion hearing, the state also offered the fact that the other perpetrators, Messier and Clements, were charged and convicted with hand to vagina contact and oral contact, respectively, in an attempt to dispel the defendant's arguments that the prior assaults were similar in nature to that with which Moats was charged.

The jury was called back into the courtroom and cross-examination of B.J.C. was continued. During questioning concerning time spent with her social worker, the following line of testimony ensued:

A. Uh-huh. Before when I was in preschool, she—we went to McDonald's and were talking and

we draw a picture of Conley [Moats] and whoever
else, Mark [Marvel Clements, Jr.].

 Q. Mark? Who's Mark?

 A. He done that same thing, what Conley done
to me.

 Q. Did he use—

 A. Too.

 Q. Did he use his finger?

 A. No, he used that (indicating). That's all he
used.

 Q. He used his penis?

 A. Uh-huh.

 Q. And where did he put it?

The prosecutor objected to the line of questioning. The
circuit court sustained the objection stating: "She's
pointing to it, but I agree that the testimony's not rele-
vant and material, and I so rule. And you don't have to
answer. She wouldn't have to answer that question. Go
ahead."

A sidebar conference was requested by the prosecu-
tion at a later point during cross-examination of the
child after defense counsel raised Ronald Messier's name
in questioning. In a brief record made by the court at the
end of the first day's testimony after the jury had been
dismissed, the judge noted that the sidebar was held
because the prosecutor believed the defense was attempt-
ing to present prior assaults to the jury through the back
door.

Also at trial, the defendant was permitted to make
two offers of proof relevant to the issue of prior untruth-
ful accusations of sexual assault allegedly made by B.J.C.
The first offer of proof was made through testimony of
Officer Sterling. When asked by defense counsel whether
B.J.C. had indicated in the social services interview that
Ronald Messier had penis-vagina contact with her, the

107

officer said, "yes." The officer then testified that, when questioned, Messier initially denied having any sexual contact with the child but then admitted to sexual contact with her two years prior to the alleged Moats incident. The contact admitted by Messier was "to reaching inside B.J.C.'s pajamas pants and touching her crotch."

The prosecutor then questioned Officer Sterling, and the officer testified that the child had not specified when Messier had sexual contact with her. Officer Sterling also testified that B.J.C. did not specifically say what happened but rather stated that Ronnie did the same things. When this was said, however, the child had been talking about Moats and had the anatomically correct dolls in a face to face, penis to vagina, position. The prosecutor objected to the offer of proof on relevancy grounds since Messier admitted, was charged and convicted of having had sexual contact with the child, therefore making the general allegation of prior contact true. The trial court agreed with the prosecutor and denied the offer of proof saying that this information did not render the prior allegation against Messier false.

> I don't consider these to be false allegations when they lead to confessions and admissions against interest, such as pleading guilty to the charge of having sexual contact.
> . . ..
> Her [B.J.C.'s] statements are ambiguous enough and my observations of her on the stand indicate to me that this she would have known. She would demonstrate and say in broad terms, he did the same types of things, I think, and that would show her not to be giving false information but in fact truthful information; therefore, it would not come within the Rape/Shield Act . . ..

108

The tape was offered and made a part of the trial record. In the final offer of proof, Ronald Messier was called to the stand and testified that he had not had penis to vagina contact with B.J.C.

The defendant first argued that the evidence he revealed in his offers of proof at trial, made through testimony by Officer Sterling and Ronald Messier, show that B.J.C. made prior untruthful allegations of sexual assault. According to the defendant, this evidence is admissible under sec. 972.11(2)(b)3, Stats.[10] The defendant asserts that when the judge refused to find untruth, it usurped the function of the jury because weight given to the evidence is for the trier of fact.

In *State v. DeSantis,* 155 Wis. 2d 774, 456 N.W.2d 600 (1990) this court reviewed three determinations that a circuit court must make under sec. 971.31(11), Stats., before it admits evidence of prior untruthful allegations of sexual assault under sec. 972.11(2)(b)3. Based on the discussion in *DeSantis,* we conclude that the circuit court did not abuse its discretion when it refused to admit the evidence proffered as a prior untruthful allegation of sexual assault.

Under *DeSantis,* the first determination that must be made by a circuit court before evidence can be admit-

---

[10]The relevant language of sec. 972.11(2)(b)3, Stats., provides:

 (b) If the defendant is accused of a crime under s. 940.225, 948.05 or 948.06 any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11) . . ..

 3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

ted is "whether the proffered evidence fits within sec. 972.11(2)(b)3" 155 Wis. 2d at 785.

The burden is on the defendant to produce evidence upon which the court could conclude "that a reasonable person could reasonably infer that the complainant made prior untruthful allegations of sexual assault." *Id.* at 788. If the defendant fails to meet this burden, the circuit court must conclude that the evidence is inadmissible under the statute and the analysis ends.

On the record now before us, it is apparent that the circuit court ruled that the evidence was insufficient to show prior untruthful allegations were made by B.J.C. Although the defendant's argument on brief avoids the pretrial stipulation, it is clear on the record that the judge accepted the stipulation which constituted agreement between the parties that prior sexual assaults had occurred. On the pretrial record, the judge repeatedly denied the defendant's motion ruling that he failed to raise a threshold of facts to show that B.J.C. had made untruthful allegations.

Further, we conclude the trial court did not abuse its discretion when it refused to admit the evidence presented in the offers of proof as prior untruthful allegations. The circuit court specifically ruled that the evidence did not deny that prior assaults had occurred; rather, the evidence supported occurrence. Also, the evidence was offered to show that the child was untruthful as to the type of assault perpetrated against her. We agree with the circuit court that the distinction as to type of assault is irrelevant to this analysis. Section 972.11(2)(b)3, Stats., is to be reviewed in terms of occurrence and whether a prior allegation of the general occurrence of a sexual assault is later recanted by the complainant or proved to be false by the defendant. In this case, the record supports the circuit court's conclusions.

B.J.C. never denied that she had also been assaulted by Messier or Clements. Both men admitted to having prior sexual contact with her, and both were charged and convicted of assaults against the child. We therefore turn to the defendant's second argument.

The second argument raised within this issue attacks the constitutionality of the rape shield law. The defendant argues that whether prior allegations of sexual assault were truthful or untruthful is irrelevant because the state's evidence rules must be balanced against a defendant's right to effective cross-examination. The defendant asserts that in this case evidence of prior sexual assaults perpetrated against the child should be admitted to dispel the jury's inference that the child's detailed knowledge of sex was gained solely from his alleged acts upon her. This issue is governed by this court decision in *Pulizzano*. In *Pulizzano*, this court held that on its face sec. 972.11, Stats., is not unconstitutional as violative of a defendant's right to present evidence. *Pulizzano*, 155 Wis. 2d at 646.

However, in *Pulizzano*, this court further states that sec. 972.11, Stats., may unconstitutionally infringe on a defendant's rights to confrontation and compulsory process as applied to the particular circumstances of a given case. *Pulizzano*, 155 Wis. 2d at 647. The *Pulizzano* opinion sets forth a two-part process for review of whether the application of sec. 972.11 to a given fact situation unconstitutionally deprives a defendant of the right to present evidence. The question then becomes whether application of sec. 972.11 in this case deprived Moats of his fair trial, confrontation and compulsory process rights.

This review begins with whether the defendant is able to present a sufficient offer of proof in order to

establish the existence of his or her constitutional right to present evidence. *Pulizzano* establishes five tests which must be met in this regard. These require a showing "(1) that the prior acts clearly occurred; (2) that the acts closely resemble those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." *See id.* at 656. If the defendant makes a sufficient offer of proof, the trial court must then determine "whether the State's interests in excluding the evidence are so compelling that they nonetheless overcome the defendant's right to present it." *Id.* at 657.

The pretrial offer of proof in this case was made through a stipulation between the defendant and the prosecutor. Review of the record and these tests reveal that, first, the parties clearly agree that prior acts of sexual assault were perpetrated against B.J.C. by Messier and Clements.

The second test is contested. The state argues that it did not stipulate to the fact that the prior sexual assaults "closely resembled" the assault with which Moats was charged. The record does not bear this out. The circuit court clearly stated that the stipulation was accepted on the facts as the defendant intended, meaning the prior sexual assaults were similar. Further, the child's testimony at trial, in which she blurted out that "Mark" had done the same things to her, cannot be ignored. The record reflects that the child indicated that Clements' contact with her was penis-vagina, the same type as Moats' charge.[11] In that the child also stated that

---

[11]The majority agrees with the dissent that it will be traumatic for the victim to again testify; however, we believe the ruling in *Pulizzano* requires it.

Clements had similar sexual contact with her, the third test is met because, like *Pulizzano,* the prior act is relevant to a material issue—that the child has an alternative source for her sexual knowledge.

Fourth, like *Pulizzano,* the information is necessary to the defendant to "rebut the logical and weighty inference that [B.J.C.] could not have gained the sexual knowledge [she] possessed unless the sexual assaults [Moats] is alleged to have committed occurred." *Id.* at 652. Finally, as in *Pulizzano,* the probative value of the evidence outweighs its prejudicial effect. Limiting instructions can be rendered so the evidence is not used

The majority cannot agree with the dissent that this testimony sufficiently preserves the defendant's constitutional rights under *Pulizzano.* For all intents and purposes, the defendant's right to present evidence of B.J.C.'s prior sexual experiences was curtailed by the circuit court's pretrial and trial rulings that this evidence was inadmissible. The rulings were based on statutory grounds and avoided Moats' constitutional rights. The circuit court's failure to correctly rule on this issue effectively precluded the defendant from raising the limited issue of the child's source of sexual knowledge as a defense theory. The rulings also precluded the defendant from engaging in effective and meaningful cross-examination of witnesses—as limited by the judge—in order to advance the theory.

As the record indicates, the defendant was unable to comment on the significance of the testimony, and the jury heard the judge declare the information immaterial and irrelevant. It is therefore speculative to assume the information served the purpose of rebutting the inference of the child's sexual inexperience in the juror's minds. Defense counsel repeatedly attempted to argue that this evidence was a critical element in Moats' defense. We agree. The ruling we adopt allows the defendant to utilize the limited information in his defense, which best upholds his constitutional rights, while upholding all avenues suggested in *Pulizzano* to protect the child as best as possible from trauma.

113

by the trier of fact for purposes other than to show an alternative source for the child's sexual knowledge. If it becomes clear that the only way to introduce the evidence of prior sexual assaults to the trier of fact is through the child's testimony, then the circuit court can, in its discretion, hold a pretrial hearing or in camera hearing in order to review her testimony and judge its probativeness. This approach will also allow the judge to limit questions to the specific issue, in order to avoid, as much as possible, causing trauma to the child. There do, however, appear to be alternatives in this case to having the child testify. For example, the parties could agree to use the social services' videotape and develop their arguments to the trier of fact from that.[12]

Based on the record, we conclude that Moats' offer of proof is sufficient under *Pulizzano* to establish his constitutional right to present evidence of prior sexual assaults perpetrated against B.J.C. to show an alternative source of knowledge. Having drawn this conclusion, *Pulizzano* requires a review of whether the state has a compelling state interest in upholding its evidentiary rules which would weigh against the defendant's constitutional rights. *Id.* at 652–653. In *Pulizzano,* we concluded that the state's interest in promoting effective law enforcement was not sufficient to overcome that defen-

---

[12]During the first trial, ambiguous indications apparently made by the child on videotape that Messier did the same things to her Moats allegedly did were ruled by the court to be ambiguous. When applying the *Pulizzano* factors to determine admissibility of the evidence of prior assaults that closely resemble those with which Moats is accused in preparation for the new trial, ambiguity of those statements under the circumstances presented should be considered in the balance between prejudice and probative value.

dant's constitutional right to present evidence. *Id.* at 654. This same ruling applies equally to the case now before us. Because we conclude that Moats' offer of proof is sufficient to establish his constitutional right to present evidence and because we conclude that the state offers no compelling state interest to outweigh this right, we remand this case for a new trial.

*By the Court.*—The judgment of the circuit court for Walworth county is reversed and remanded for further proceedings consistent with this opinion.

HEFFERNAN, CHIEF JUSTICE (concurring). I join in that portion of the majority's opinion relying on *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990). I agree with the majority's conclusion that "Moats was denied his constitutional rights when the trial court prohibited introduction of prior sexual assaults perpetrated upon B.J.C. for the limited purpose of establishing an alternative source for her sexual knowledge." Majority op. at 103.

Because I conclude that the majority erred when it holds that an unconstitutionally obtained confession constituted, in itself, sufficient evidence to bind the defendant over for trial, I am obliged to disagree with that portion of the opinion and, therefore, can only concur in the mandate to reverse and remand for trial.

While I agree for practical purposes that an unconstitutionally obtained confession is admissible at a preliminary examination, I do not agree that it alone may constitute sufficient evidence to bind a defendant over for trial.[1] The majority asserts that, if a defendant is

---

[1] I recognize that a presiding judge will not know whether a confession was obtained in violation of the constitution until after that issue has been determined at a suppression hearing. If, after a suppression hearing has been held, a confession is deter-

bound over for trial based solely on evidence which would be inadmissible at trial, the purpose of a preliminary examination is not adversely affected.

The purpose of a preliminary examination is to protect the defendant from hasty, improvident or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the defendant his right to liberty. *Thies v. State,* 178 Wis. 98, 189 N.W. 539 (1922). Allowing a prosecution to proceed based solely on evidence which would not be admissible at trial defeats the purpose of having judicial intervention at this stage of the criminal proceeding.

The majority justifies its holding by relying on sec. 971.31(5)(b), Stats., and on federal grand jury and federal preliminary examination cases. Section 971.31(5)(b) provides that objections to the constitutionality of evidence shall not be made until after the preliminary examination. While sec. 971.31(5)(b) provides support for the majority's determination that a confession obtained in violation of the constitution is admissible at the preliminary examination, this statute does not address the sufficiency of the evidence to bind a defendant over for trial. In addition, the majority asserts that, because tainted evidence suffices to indict a defendant at the federal level, therefore tainted evidence is sufficient to bind over a defendant charged with a felony in Wisconsin. While the federal grand jury, federal preliminary examination, and Wisconsin's preliminary examination all serve a pretrial screening function, they are not equivalents. Few procedural safeguards apply to grand jury proceedings. *See* Alexander and Portman, *Grand*

---

mined to be unconstitutional, then an appropriate and fair procedure should require the arraignment judge to make an independent determination of whether or not probable cause exists to bind the defendant over for trial.

*Jury Indictment Versus Prosecution by Informa-tion—An Equal Protection-Due Process Issue,* 25 Hastings L.J. 997 (1974). The grand jury is a secret proceeding of lay persons, with no presiding magistrate, where even the prosecutor may be excluded. Only the prosecutor is available to provide legal advice to the grand jurors should they request it. Persons subsequently charged do not have the right to have counsel present at a grand jury proceeding. *United States v. Mandujano,* 425 U.S. 564 (1976). They do not have the right to be present or the right to cross-examine witnesses at a grand jury proceeding, nor do they have the right to present any evidence.

To the contrary, in Wisconsin, a defendant has a statutory right to a preliminary examination. *See* sec. 970.03, Stats., and *State v. Dunn,* 121 Wis. 2d 389, 359 N.W.2d 151 (1984). A magistrate must preside over the preliminary examination and is available to resolve evidentiary issues. Defendants have the right to cross-examine witnesses and to present exculpatory evidence at the preliminary examination. Section 970.03(5), Stats. Defendants have a right to counsel at a preliminary hearing because the preliminary hearing is a "critical stage." *Coleman v. Alabama,* 399 U.S. 1, 9–10 (1970). (Chief Justice Burger noted in his dissent that it was anomalous to provide counsel at a preliminary hearing, but not at a grand jury indictment.) None of these important rights inure to persons charged by a grand jury.

Evidentiary requirements to establish probable cause at grand jury proceedings and federal preliminary examinations are relaxed when compared with Wisconsin's preliminary examination. The rules of evidence do not apply to grand jury proceedings. *See* Rule 911.01(4)(b), Stats., and Fed R. Evid 1101(d)(2) (rules of evidence other than with respect to privileges do not

apply to grand jury proceedings); *see also Costello v. United States,* 350 U.S. 359 (1956) (upholding indictment founded solely on hearsay); cf. *United States v. Umans,* 368 F.2d 725 (2d Cir. 1966), *cert. dismissed,* 389 U.S. 80 (1967). A grand jury indictment may indeed be founded solely on hearsay. *Costello v. United States,* 350 U.S. 359 (1956). The probable cause finding at a federal preliminary examination may be based upon hearsay evidence in whole or in part. Rule 5.1 Fed. R. Crim. Proc. (evidentiary standards at the preliminary examination are relaxed in order to decrease pressure upon United States Attorneys to abandon the preliminary examination in favor of the grand jury indictment). *See* Moore's *Federal Practice,* Federal Rules of Criminal Procedure, Rule 5.1, p. 34 (1989). The United States Supreme Court has refused to extend constitutional exclusionary rules to grand jury proceedings. *United States v. Calandra,* 414 U.S. 338 (1974) (upholding validity of indictment based on evidence obtained as a result of illegal search and seizure which would have been excluded from trial). The sufficiency of the evidence before a grand jury is not reviewable. *Costello,* 350 U.S. 359, 363 (1956).

In contrast, the rules of evidence govern Wisconsin's preliminary examination. *Mitchell v. State,* 84 Wis. 2d 325, 267 N.W.2d 349 (1978). Hearsay is not even admissible at the preliminary hearing. Courts reviewing the sufficiency of the evidence presented at a preliminary examination make an independent determination of whether the probable-cause standard has been met. *State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601 (1981).

This court has candidly stated that, on similar evidence, probable cause may be easier to find in a grand jury proceeding than in a preliminary examination.

*State ex rel. Welch v. Waukesha Co. Cir. Court,* 52 Wis. 2d 221, 225, 189 N.W.2d 417 (1971). In recognition of this difference, in 1979 the Wisconsin legislature provided that defendants were entitled to a preliminary hearing even if already indicted by a grand jury.[2] This in itself demonstrates that the legislature does not view these pretrial procedures as being duplicative or identical in terms of the rights afforded to a defendant. Given the significant differences between the federal grand jury and preliminary examination and Wisconsin's preliminary examination, I disagree with the majority that the federal cases upon which they rely are instructive, let alone determinative, on an issue concerning procedural safeguards and the sufficiency of the evidence at Wisconsin's preliminary examination.

Even though unconstitutional evidence may be admissible at the preliminary examination, tainted evidence alone is insufficient to constitute probable cause for binding a defendant over for trial. The majority suggests that, because in *State v. Williamson,* 113 Wis. 2d 389, 335 N.W.2d 814 (1983), a divided court concluded that a misdemeanor criminal complaint can be based upon unconstitutionally obtained evidence, a felony defendant should likewise be bound over for trial based

---

[2]Chapter 291, Laws of 1979, created sec. 968.06, Stats., which provides:

Indictment by grand jury. Upon indictment by a grand jury a complaint shall be issued, as provided by s. 968.02, upon the person named in the indictment and the person shall be entitled to a preliminary hearing under s. 970.03, and all proceedings thereafter shall be the same as if the person had been initially charged under s. 958.02 and had not been indicted by a grand jury.

*See also* Emerson and Ames, *The Role of the Grand Jury and the Preliminary Hearing in Pretrial Screening,* National Institute of Justice, p. 8 (1984).

solely on unconstitutionally obtained evidence. This conclusion renders the preliminary examination meaningless by equating the probable-cause standard required to bind a defendant over for trial with the probable-cause standard required for issuance of a criminal complaint. Relying exclusively upon evidence which cannot be used at trial does not satisfy the purpose of the preliminary examination. Courts require the threshold showing of probable cause in order to save the defendant from the humiliation and anxiety involved in an unwarranted public prosecution and to discover whether there are substantial grounds upon which a prosecution may be based.[3] In addition, requiring a showing of probable cause provides a check on the prosecutor to ensure that public money is being spent wisely and not being wasted on litigation where there is insubstantial evidence. The majority states that it would be ethically suspect for a prosecutor to use a tainted confession at a preliminary examination when that was the only evidence available for trial. This leaves the determination of when a defendant should be bound over for trial within the discretion of the prosecutor. To the contrary, it is for the courts to determine whether there is sufficient evidence to bind a defendant over for trial. If, at the preliminary examina-

---

[3]Because I decide that this case is resolved on the issue of sufficiency of the evidence, it is unnecessary to reach the issue of whether the defendant has been denied a liberty interest without due process because he has been bound over for trial on insufficient evidence. *See Jackson v. Virginia,* 443 U.S. 307 (1979) (defendant denied due process if conviction based on insufficient evidence); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985) (the right to due process is conferred, not by legislative grace, but by constitutional guarantee); and *Ingraham v. Wright,* 430 U.S. 651 (1977) (due process historically provided protection against unjustified intrusions on personal security).

tion, a prosecutor presents only evidence which would be inadmissible at trial, quite simply, there should be no trial.

The majority asserts that defects in evidence are properly remedied at trial. However, due to the propensity to use plea bargaining as a substitute for the criminal trial, it is naive to presume that defendants will always receive these procedural protections. *See* Arenella, *Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication,* 78 Mich. L.R. 463 (1980). Furthermore, the preliminary examination is mandated to protect the defendant *before* trial. I therefore conclude that a judicial magistrate cannot reasonably find probable cause or conclude that a defendant should be bound over for trial where no evidence is presented at the preliminary examination which could be introduced at trial. Because the reasoning of the majority completely subverts the fundamental purpose of the preliminary examination, I disagree with the majority's conclusion that there was a legally valid bindover. I do, however, agree with the majority's ultimate decision to reverse and remand on the basis of the rationale of *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990), and, therefore, I concur in the mandate.

I am authorized to state that Justice Shirley S. Abrahamson joins in this concurrence.

DAY, J. (dissenting). There is simply no reason for subjecting the child victim in this case, a female five years old at the time she was sexually assaulted, to the trauma of another trial, as the majority mandates. In addition to the allegations here, the child victim previously had been sexually assaulted by two other adult males. The majority's decision today unjustly continues

her tragic story by requiring her to relive those events at a needless second trial.

Relying upon our recent decision in *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), the majority concludes that Defendant was unconstitutionally denied his right to introduce evidence of the prior sexual assaults the child complainant experienced. The basis for the majority's conclusion is that the evidence should have been admitted to permit Defendant to rebut the inference that the child complainant could only have possessed the sexual knowledge she did if Defendant sexually assaulted her. I dissent because the record clearly shows that despite the circuit court's pre-trial ruling prohibiting Defendant from presenting evidence of the prior sexual assaults, the jury had the benefit of that evidence in reaching its verdict. Accordingly, I would affirm the conviction.

I do not dispute the fact that in the circumstances of a particular case, a defendant's constitutional rights may require admission of evidence of a child complainant's "prior sexual conduct" for the limited purpose of establishing an alternative source for sexual knowledge, despite the potentially damaging consequences admission could have for the child. *Pulizzano* resolved that issue. But *Pulizzano* has no bearing here.

*Pulizzano* applies only in specific circumstances. First, the complainant must be a child whose age is such that he or she can reasonably be presumed "sexually innocent." Second, the child complainant's "prior sexual conduct" must include acts which are substantially similar to those alleged against the defendant. Third, evidence of the child complainant's "prior sexual conduct" must have been excluded at trial. It is the last of these conditions that the majority ignores here.

Unlike *Pulizzano,* in this case the jury heard evidence that the child complainant had a substantially similar prior sexual experience through her own testimony. The evidence was elicited by Defendant's counsel while cross-examining the child complainant. The record provides as follows:

[CHILD COMPLAINANT]: Uh-huh. Before when I was in preschool, she—we went to McDonald's and were talking and we draw a picture of Conley [Moats] and whoever else, Mark [Marvel Clements, Jr.].

[DEFENSE COUNSEL]: Mark? who's Mark?

[CHILD COMPLAINANT]: He done that same thing, what Conley done to me.

[DEFENSE COUNSEL]: Did he use—

[CHILD COMPLAINANT]: Too.

[DEFENSE COUNSEL]: Did he use his finger?

[CHILD COMPLAINANT]: No, he used that (indicating). That's all he used.

[DEFENSE COUNSEL]: He used his penis.

[CHILD COMPLAINANT]: Uh-huh.

[DEFENSE COUNSEL]: And where did he put it?

At this point, the prosecutor objected.

[THE PROSECUTOR]: Your Honor, I'll object to this line of questioning.

[CHILD COMPLAINANT]: (Indicates).

The circuit court sustained the objection stating:

She's pointing to it, but I agree that the testimony's not relevant and material, and I so rule. And you don't have to answer. She wouldn't have to answer that question.

The majority construes the prosecutor's objection and the circuit court's ruling to apply to the entire transcript excerpt above and concludes evidence of the child complainant's prior sexual conduct was excluded. I disagree. The prosecutor's objection and the circuit court's ruling are ambiguous at best. I construe each as applying only to the line of questioning by Defendant's counsel regarding where "Mark," one of the prior assaulters, had put his penis. It was only at that point that the prosecutor objected, and the circuit court is very specific in its response and makes reference to that line of questioning. If the prosecutor objected to the entirety of the transcript excerpt, he should have objected sooner. The failure to make a timely objection constitutes a waiver of the objection. *Terpstra v. Soiltest, Inc.*, 63 Wis. 2d 585, 596, 218 N.W.2d 129 (1974). The objection must be made as soon as the objectionable nature of the testimony is reasonably apparent. *Id.* Here the objectionable nature of the child complainant's testimony was apparent immediately in her response to the first question above by Defendant's counsel. The child complainant testified that the "same thing" had been done in a previous sexual assault. Yet the prosecutor did not object until four more questions were asked by Defendant's counsel.

Even if the majority's interpretation is accepted, it matters little. The prosecutor failed to state the specific grounds for his objection—that the testimony was excluded by the rape shield law. It has long been the rule that a general objection, as the prosecutor made here, is insufficient. *See, e.g., Shafer v. City of Eau Claire*, 105 Wis. 239, 244, 81 N.W. 409 (1900); *Teegarden v. Town of Caledonia*, 50 Wis. 292, 296, 6 N.W. 875 (1880); *Knapp v. Schneider*, 24 Wis. 70, 72 (1869). Analogous to the prosecutor's objection here, this court in *In re the Estate*

*of Menzner,* 189 Wis. 340, 207 N.W. 703 (1926), held that the mere statement "I object to that" failed to constitute a valid objection. *Id.* at 342. Even if the prosecutor had properly objected, he failed to carry his burden to move to have the testimony stricken from the record. *Cf. In re Utting's Estate,* 250 Wis. 97, 106, 26 N.W.2d 254 (1947); *Prentiss v. Strand,* 116 Wis. 647, 654–55, 93 N.W. 816 (1903); *Allen v. Boge,* 114 Wis. 1, 10, 89 N.W. 924 (1902); *Bigelow v. Sickles,* 80 Wis. 98, 103–04, 49 N.W. 106 (1891); *Tebo v. City of Augusta,* 90 Wis. 405, 407–08, 63 N.W. 1045 (1895); *Jaqueish v. Town of Ithaca,* 36 Wis. 108, 113 (1874).

No matter which interpretation is taken, the jury learned through the child complainant's own testimony that she previously had been sexually assaulted in the "same" manner. The circuit court did not strike the evidence from the record or instruct the jury to disregard it. Because the child complainant's testimony was not properly objected to and stricken from the record, the jury could consider it in reaching its verdict. *See Drexler v. All American Life & Casualty Co.,* 72 Wis. 2d 420, 432, 241 N.W.2d 401 (1976); *John v. Pierce,* 172 Wis. 44, 50, 178 N.W. 297 (1920); *Coggswell v. Davis,* 65 Wis. 191, 203, 26 N.W. 557 (1886). If up to that point in the trial the jury had logically presumed from the child complainant's young age that she was sexually innocent, that inference was instantly vanquished upon hearing that evidence. Yet the majority finds a constitutional deprivation and grants Defendant a new trial because he was not permitted to rebut an inference that did not exist.

Defendant cannot claim that he should have been permitted greater latitude in presenting the evidence. There is no doubt a defendant is entitled to the fullest opportunity to present his or her defense. But the constitutionally-required exception to the rape shield law rec-

ognized in *Pulizzano* is a very narrow one. As we stated there, the State has legitimate and important interests in excluding evidence of a child complainant's prior sexual conduct, and in some cases those interests might even overcome a defendant's constitutional rights to confrontation and compulsory process. Chief among those interests is protecting the child victim. Mindful of the State's interests, defendants are only entitled under *Pulizzano* to present that measure of evidence necessary to rebut the inference that the child could only have possessed the sexual knowledge he or she did if the allegations against the defendant were true. In this case, the measure of "prior sexual conduct" evidence which Defendant would have been entitled to present under *Pulizzano* is no greater than that which the jury in fact heard.

The majority's decision finds fault with the circuit court's order excluding evidence of the prior sexual assaults, but ignores the circuit court's error, with respect to its own ruling, in admitting it. Particularly disturbing is that Defendant elicited the evidence despite the circuit court's pre-trial ruling. The evidence did not "slip in through the back door." Defendant's counsel's questions on the matter were direct and calculated, even though the circuit court had denied his vigorous pre-trial arguments to admit the evidence. Despite the fact Defendant had the benefit of that evidence, however, the jury still returned a guilty verdict.

There is simply no basis for subjecting the child to the trauma of another trial. I would affirm.

I am authorized to state that Justices William G. Callow and Louis J. Ceci join in this dissenting opinion.